CASE 18—PETITION EQUITY—DECEMBER 22.

# Babbit, &c., vs. Scroggin, &c.

APPEAL FROM THE FRANKLIN CIRCUIT COURT.

1. A conveyance, in the year 1823, to husband and wife, absolutely and without limitation, made them tenants by the entirety, and the whole estate, so conveyed, resulted to the survivor.  (6 *Dana*, 388 ; 1 *Dana*, 243.)

2. Where the wife was the owner, by inheritance, of one fourth of the land which was afterwards conveyed to her and her husband, such fourth part descended to her heirs.

HARLAN & HARLAN, for appellants, cited 1 *Dana*, 37 ; 6 *Dana*, 388.

G. W. CRADDOCK, on same side, cited *Civil Code, sec* 155.

T. N. LINDSEY and J. M. HEWITT for appellees.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

Nancy Babbit and others, as heirs of William Parker, deceased, brought this suit in chancery in December, 1859, against Francis Scroggin and others, claiming as heirs of Mary. Parker, deceased, who was the wife of said William, asserting a right to two tracts of land—one of 157 acres, in Franklin county, on the south side of the Kentucky river, the other of 186 acres, on the north side of the same river, in Franklin and in Woodford counties—and praying for a decree quieting their title and distributing the lands between them.

The circuit court dismissed the bill, adjudging that the tract of 186 acres was never the property of either William or Mary Parker, but was the property of John Parker, a party to the suit; and also decided that Mary Parker was the owner of the tract of 157 acres, and that, consequently, her heirs were entitled to the whole of it.

As to the tract of 186 acres, the decree is approved. Mary Parker never had any claim to this tract. And, although William Parker resided on it for fifty years and until his death, in October, 1859, yet he entered on and continued to occupy it as the gratuitous tenant of John Parker, of Fayette, who, dying in 1837, made the following testamentary disposition of it: "I also give my son, John Parker, my little mill tract on Glen's creek, whereon my brother William now lives. It is my wish and desire my brother William may enjoy the little farm as long as he may live, without rent or control." This is the tract of 186 acres aforesaid.

There is no plausible pretense for claiming for William Parker any other title to this tract than that derived from his long occupancy. And there are, independently of John Parker's devise, abundant circumstances conducing to show satisfactorily that William entered on it as the tenant of John, who was indisputably the exclusive owner of it; and, during his long occupancy, he, by frequent and almost continuous acts

VOL. I—19

and declarations, recognized his brother's right and his own tenancy under him.

But as to the other tract of 157 acres, we cannot concur with the circuit court. This was the property of James Arnold, the father of Mary Parker, and was alloted, on the 26th of June, 1823, by commissioners, with the consent of her co-heirs, as her portion of her father's land descended to his heirs, and was, on the same day, conveyed by the surviving co-heirs to William Parker and herself in fee simple, without qualification or reservation, whereby they became, in law, "*tenants by the entirety.*" Under that deed they held and used the land during her life, and he continued to hold and use it as long as he lived. A small portion of the heirs making the deed, to-wit: some of Stephen Arnold's children, were infants, represented by Wm. McBride as their guardian. But this imperfection is cured by the lapse of more than forty years without any question of the right of the alienees. After such a lapse of time, undisturbed possession, and continued acquiescence, and especially in a family settlement, the law presumes every requisite to a perfect title. But, moreover, the deed is confirmed by estoppel. The parties claiming as Mary Parker's heirs admit that her only title to the whole of the 157 acres was derived from that conveyance in severalty; for otherwise, she had no such title. There is no proof that William Parker ever renounced or intended to give up any right the deed vested in him. The legal effect of the deed must be determined by the construction of its terms, which undoubtedly make it pass the whole ultimate right to the survivor. Mary Parker died about twenty years before the death of her husband, and never indicated any dissatisfaction with the deed. We, therefore, cannot resist the conclusion that the legal title which it conveyed was absolutely in William Parker at his death, and descended to his heirs; and this court so adjudged in the analogous cases of *Thompson vs. Peebles,* 6 *Dana,* 388, and *Rogers vs. Grider,* 1 *Ib.,* 243, in the last of which cases this court decided—1. That a conveyance to husband and wife, absolutely and without limitation, makes them tenants by the *entirety,* and the whole estate, so conveyed, results to the survivor; and, 2. That the statute of 1796, abol-

ishing survivorship among *joint* tenants, did not apply to tenants by the *entirety*.

The conclusion seems unavoidable that William Parker was entitled by survivorship to all the land, the exclusive title to which was derived by himself and wife from her co-heirs by the conveyance of 1823.

But, before and independently of that deed, she held a legal title, by descent, to one undivided fourth of the land, of which she was never divested by any act shown or asserted in this record. She did not, therefore, derive her title to her own inheritance from the release of her co-tenants, but acquired thereby their titles only. Her co-heirs could only convey their own interest to her and her husband; and, whatever may be the literal import of the deed, its legal effect is necessarily restricted to three fourths of the land, the residual one fourth then being her's and not their's. And, consequently, when she died, her undivided fourth descended to her heirs encumbered only by her surviving husband's right of courtesy.

We are, therefore, of the opinion that the heirs of William Parker are entitled to three fourths, and the heirs of Mary Parker to one fourth of the land described in the conveyance of 1823.

Wherefore, the decree in favor of John Parker is affirmed, and that against the appellants reversed, and the cause is remanded for further proceedings and decree of partition according to the principles of this opinion.