## Stone, et al. v. Winn, et al.

(Decided May 26, 1915.)

## Appeal from Estill Circuit Court.

1. Judgment—Res Judicata.—The rule of res judicata means, that where a question or a fact is once litigated and determined by the judgment of a court of competent jurisdiction, no fact or question that was therein litigated, or could have been litigated, can thereafter be relitigated by the same parties, or their privies.

2. Judgment—Res Judicata.—A judgment is binding between the parties thereto and their privies, whether it be right or wrong; in either event, the rule of res judicata applies.

3. Judgment—Conclusiveness.—Where a court judicially considers and adjudicates the question of its jurisdiction, and decides that the facts exist which are necessary to give it jurisdiction of the case, the finding is conclusive, and cannot be controverted in a collateral proceeding.

4. Judgment—Against Counties—Scope.—A judgment against a county or its legal representatives in a matter of general interest to all the people of the county, is binding not only on the official representatives of the county, but on all of its citizens, though they were not made parties defendant by name.

5. Statutes—Construction—Delivery of County Bonds in Aid of Railroad.—The Act of 1873, Gen. Sts. (1881), p. 843, requiring, as a condition precedent to the delivery of county bonds in aid of a railroad company, that the person to whom such bonds are to be delivered shall give a bond with security conditioned that said county bonds so issued and delivered shall be faithfully and honestly applied to the object for which the same were originally subscribed, and for which said bonds were issued, has no application to a case where the bonds were deliverable only after the completion of the railroad.

6. Statutes—Act in Aid of Railroad Construction.—So much of the Act of 1873, Gen. Sts. (1881), p. 843, as required a railroad company which received county bonds to aid it in building a railroad, to furnish the county court on or before the 1st day of January in each year after the construction of the railroad, a balance sheet showing receipts and disbursements of said county for the subscription, and how the money was disbursed during the preceding year, cannot affect the validity of the bonds which were delivered after the railroad was completed, and pursuant to a judgment declaring the railroad had been completed, and that the bonds in payment thereof should be delivered.

7. Judgment—Ex parte Order of Fiscal Court—Delivery of Bonds in Aid of Railroad.—An ex parte order of the fiscal court of the county directing the trustee who held in escrow the bonds of the county voted to aid in building a railroad in the county, not to deliver the bonds until the further order of the fiscal court, was

ineffectual as against the subsequent judgment of a circuit court which passed upon the validity of the bonds and required their delivery.

8. Fraud—Action for Relief.—Under Section 2519 of the Ky. Sts., an action for relief upon the ground of fraud or mistake cannot be brought ten years after the perpetration of the fraud.

9. Counties—Subscription by County Court for Shares of—What Necessary to Validity.—There can be no valid and enforceable subscription for shares of a railroad company by the county court on behalf of the county without the power to levy and collect taxes to pay the subscription; otherwise the subscription would be worthless.

BURNAM & BURNAM and WILLIS, TODD & BOND for appellants.

GEORGE W. GOURLEY, HAZELRIGG & HAZELRIGG and J. P. HOBSON & SON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing.

This suit was brought by the fifteen appellees, as taxpayers of Estill County, to enjoin the fiscal court of that county from levying a tax to pay the principal or the interest on fifty bonds of the aggregate face value of $50,000.00, issued by Estill County in 1888 to the Richmond, Nicholasville, Irvine & Beattyville Railroad Company, upon the ground that the charter provisions of the railroad company had not been complied with, and that the election which authorized the bonds had been carried by fraud.

The action was brought by the appellees in their own behalf and in behalf of the other taxpayers of the county against the appellants, J. C. Stone, J. C. Bright, and T. J. Curtis, who own 47 of said bonds.

The circuit court granted the relief asked, by enjoining the levy of the tax and directing the surrender and cancellation of the bonds and the interest coupons attached thereto. From that judgment the defendants prosecute this appeal.

The pleadings in the case are quite voluminous, and in order to get a clear understanding of the issues it will be necessary to set out the facts somewhat in detail.

The Richmond, Nicholasville, Irvine & Beattyville Railroad Company, which will hereinafter be called the railroad company for brevity, was incorporated by an

act of the General Assembly of Kentucky, approved March 10th, 1888. Acts 1887-8, Vol. I., p. 913.

The provisions of the incorporating act, upon which this case turns, are sections 5, 8, 9, and 10.

Section 5 of the act authorized the company to construct a railroad from a point on the Jessamine County line adjoining Woodford County, near Keane, in Jessamine County, and thence southeastwardly through Nicholasville and Madison County to Richmond; and thence eastwardly through the counties of Madison, Estill, and Lee, to a point at or near Beattyville, on the forks of the Kentucky River, in Lee County. The company was given the powers usually granted to railroad companies.

Section 8 authorized either of said counties to subscribe to the capital stock of the railroad company, and to pay therefor in the negotiable, thirty year, six per cent. bonds of the county. The bonds could be issued only upon the majority vote of the people of the county, and pursuant to an application made to the county court by a petition of fifty resident taxpayers requesting that the question of subscribing to the capital stock of the railroad company be submitted to the voters of the county.

Section 9 is largely administrative in its features, and provided for the canvassing of the vote; the entering of an order of subscription in behalf of the county by the county judge to the capital stock of the railroad company, and the execution of the bonds of the county by the county judge and the county clerk.

It further provided that the county judge should order the bonds to be deposited with a trustee to be held *in escrow;* that the railroad company might deposit the certificate for capital stock of said company, agreed to be given in exchange for said bonds, with such trustee; and, that the said bonds should be delivered to the railroad company or to its order, when it should be entitled to the same under the terms and conditions of the subscription submitted to said county.

Section 9 contained this further final provision:

"It shall not be lawful for   *   *   *   Estill (county) to subscribe a greater amount than $100,000.00;   *   *   * and it shall not be liable for any of said bonds to be delivered to such railroad company, except as the road is completed in accordance with the order of submission made by said county court."

Section 10, in full, reads as follows:

"An *annual tax* sufficient to pay the interest of said bonds, and the principal when it shall become due, shall be levied and collected and paid out by the officers of said county as provided in the case of other county taxes; *Provided,* that by no future act of consolidation with any railroad company shall this company acquire the power or right to submit any proposition of taxation to any county other than those named in this act: *And provided further,* that said company shall make a preliminary survey of its route within one year after the passage of this act, and shall commence work in good faith upon its roadbed within the next year, and shall each year thereafter perform one-fifth of the work necessary to complete said road; *And provided further,* that it shall not be lawful for said railroad company to receive any of said bonds from Jessamine County until the road is completed to Nicholasville, when it shall be entitled to one-half thereof, and to the remaining one-half when the road is completed to Richmond, Kentucky. And it shall be unlawful for said railroad to receive any of said bonds from Madison County until the road is completed to Richmond, when it shall be entitled to one-half thereof, and to the remaining one-half when the road is completed to a point on the Kentucky River at or near Beattyville. *And it shall be unlawful for said railroad to receive any of said bonds from Estill County, except proportionally, as the road has been completed through said county.* And it shall be unlawful for said railroad to receive any of said bonds from Lee County until the road is completed to a point on the Kentucky River, at or near Beattyville; and if said corporation shall acquire any lands by subscription or otherwise, not necessary for the operation of its railroad, it shall dispose of the same within five years after the date of the deed through which it has derived title."

By an order entered July 19th, 1888, the Estill County Court submitted to the people of the county the question of subscribing $100,000.00 to the capital stock of the railroad company and the issual of bonds in that amount to pay for the stock; said order of submission further providing as follows:

"Said trustee or trust company shall deliver fifty thousand dollars of said bonds to the said railroad company or to its order when it shall have completed its

independent line of road of standard gauge through the counties of Jessamine, Madison, and Estill to the town of Irvine, or a point within 600 yards of said town limits, crossing the Kentucky River somewhere between the mouth of White Oak Creek and a point above Irvine within 600 yards of the town limits, and shall have caused a train of passenger cars drawn by a steam engine to be run from said point at or near Irvine across the Kentucky River, thence through the counties of Estill, Madison, and Jessamine into the county of Woodford over its own road, and thence over the Louisville Southern Railroad and its connections into the city of Louisville; but the aforesaid fifty thousand dollars of bonds are not to commence bearing interest until six months after the company is entitled to have them delivered as aforesaid. Said trustee or trust company shall deliver to said railroad company or its order the remaining fifty thousand dollars of said bonds when said railroad company shall have completed its independent line of road from said point at or near Irvine across the county of Estill and into the county of Lee, to a point on the Kentucky River within one-half mile of Beattyville or Proctor, and shall have caused a train of passenger cars drawn by a steam engine to be run from its said terminus near Beattyville or Proctor through the counties of Lee, Estill, Madison, and Jessamine, into the county of Woodford over its own road, and then over the Louisville Southern and its connections into the city of Louisville. Before said trustee or trust company shall deliver any of said bonds to said railroad company the interest coupons that have then matured shall be cut off and destroyed, and if any of said coupons have partially matured, said trustee or trust company shall enter credit thereon for the part that has matured before delivering the same.

"The said company shall place the construction of its whole line under contract at the same time and shall commence work upon its roadbed in Estill County *within six months after its subscription, and shall complete its road from its Woodford County terminus to the point at or near Irvine within three years after said period of six months, and shall complete its road to its Lee County terminus within one year after the expiration of said last named period.* If either of these conditions as to time is not complied with, said railroad company shall not be entitled to any of said bonds."

The election was held on August 11th, 1888, and resulted in favor of the subscription. Bonds of the par value of $100,000.00 were executed, and, pursuant to section 8 of the charter, they were placed in the hands of Edward Conroy, as trustee, who executed a bond as required by section 9 of the charter.

The railroad company, through the instrumentality of the Ohio Valley Contract & Improvement Company, began the construction of the road within six months after the subscription; and, by the terms of the order of submission, it had three years and six months, from August 28th, 1888—that is, until February 28th, 1892—in which to complete the road to a point within 600 yards of the limits of the town of Irvine, the county seat of Estill County.

Irvine is situated immediately east of the Kentucky River, and the town known as West Irvine is located upon the opposite or western side of and near the Kentucky River. The road had been completed to West Irvine in the summer of 1891, when the construction company having the work in charge failed, and did nothing further in that direction. In order to complete the road to the point within 600 yards of the town limits of Irvine, it was necessary to construct an expensive railroad bridge across the Kentucky River at West Irvine. This was left wholly undone by the construction company.

Shortly thereafter Estill County filed an action in the Estill Common Pleas Court against the railroad company to prevent the delivery of the bonds. In the meantime, General Bennett H. Young and his associates, having acquired by assignment the rights of the construction company, undertook to build the bridge across the Kentucky River at West Irvine, and to thus complete the road to the point within 600 yards of the town limits of Irvine. Under the contract of subscription they would then be entitled to bonds of the par value of $50,000.00.

General Young appeared before the Estill County Court in August, 1891, and stated fully what he and his associates proposed to do, but that they could not undertake the work with the suit pending; and, in order to enable General Young and his associates to do the work unhampered, the Estill County Court dismissed its suit in the Common Pleas Court on August 24th, 1891,

without prejudice. General Young and his associates constructed the bridge within the time provided by the contract, and ran a train of passenger cars drawn by a steam engine from Louisville over the entire road, across the Kentucky River at West Irvine, and to a point within 600 yards of the town limits of Irvine, on February 20th, 1892, which was eight days before the expiration of the time prescribed in the contract.

Claiming that they were then entitled to bonds to the extent of $50,000.00 under the contract, and Conroy declining to surrender the bonds, General Young and his associates filed an action in the Louisville Chancery Court, on March 2nd, 1892, against Conroy, the railroad company, and other defendants, seeking to compel Conroy to deliver the bonds. Estill County intervened in that action, and it was elaborately prepared. By the judgment of the Louisville Chancery Court, entered March 6th, 1895, it was held that the railroad company and its successors had complied with the contract up to the time the suit was filed, and Conroy was directed and required to surrender to General Young and his associates the first half of the bonds of the aggregate face value of $50,000.00. By the judgment, the remaining 50 bonds of the par value of $50,000.00 were directed to be surrendered to Estill County. Upon an appeal from that judgment by Estill County it was affirmed by this court in October, 1897.

Matters remained in this situation for many years. Estill County elected one member of the board of directors of the railroad company, who served in that capacity for quite a while; and for the years 1909 to 1914, both included, Estill County levied a tax of 25 cents on each $100.00 of taxable property for the purpose of paying the interest upon the bonds, and applied it to that purpose.

On June 18th, 1913, this action was filed, as above stated, by the appellee Winn, and fourteen other taxpayers of Estill County, to cancel the 50 bonds which had been delivered to General Young and his associates in 1897, and are now held by the appellees, Stone, Bright, and Curtis. The petition and amendments alleged that said bonds are void and should be canceled, and the fiscal court of Estill County restrained from levying a tax to pay them for the following reasons:

1. Because the railroad company failed to obtain subscribers to 200 shares of its capital stock as provided by its act of incorporation before it submitted the proposition to the counties through which it ran;

2. That the proposition submitted to the voters of Estill County was not in conformity with the act of incorporation;

3. That the election was not carried by a majority of the legal voters of Estill County, but it was carried by fraud and bribery;

4. That said election was not advertised as required by the act of incorporation;

5. That the railroad was not completed to the town of Irvine within the time prescribed by the proposition submitted to the voters;

6. That the railroad company became insolvent and a receiver was appointed, and the road was never completed to the town of Beattyville as provided in the charter;

7. That the railroad company failed to execute the bond required by the act of April 19th, 1873. (Genl. Stats. 1881, p. 843; Genl. Stats. 1888, p. 1215); and,

8. That the railroad company failed to render to the county a written report showing how much it had received and how it had disbursed the money realized from the Estill County bridge bonds.

The answer contains three paragraphs: (1) a traverse of all the material allegations of the petitions; (2) a plea of *res judicata;* and (3) a plea of the five, ten, and fifteen years statutes of limitations.

The trial court overruled demurrers to the first and third paragraphs of the answer, and sustained a demurrer to the second paragraph. In their reply, the plaintiffs admitted the entry of the judgment in the case of Young v. Conroy, which was the basis of the plea of *res judicata,* but by the way of avoidance they alleged: (1) that the Louisville Chancery Court was without jurisdiction to enter the judgment; (2) that the judgment was procured by fraud; and (3) that Estill County was coerced to enter its appearance in said suit.

The record of the action of Young v. Conroy in the Louisville Chancery Court is filed in this action in support of the plea of *res judicata.*

The rejoinder put in issue all the affirmative allegations of the reply.

By an amended petition filed September 15th, 1914, the plaintiffs further alleged that the fiscal court of Estill County, at a meeting held on August 24th, 1891, had directed Conroy, the trustee, to hold said bonds until he should be ordered by said court to deliver them, and that the Louisville Chancery Court, for that reason, had no jurisdiction to entertain the action which was subsequently filed therein on March 2nd, 1892. A demurrer to this amended petition having been overruled, an answer thereto was filed controverting all its material allegations, and further alleging that the question here presented had been raised and decided adversely to the plaintiff's contention, in the case of Young v. Conroy, above referred to; and, that if it had not been raised in the same manner as was now attempted by the plaintiffs, it might and should have been so. raised in the former suit.

Upon the issues thus made, proof was taken by either side; and upon a hearing of the case the Estill Circuit Court entered a judgment on January 1st, 1915, granting the relief asked, as heretofore recited. As no opinion was given by the chancellor for his ruling, and we are, therefore, not advised as to the precise ground upon which he rested his judgment, we will consider the issues in their order, as raised by the pleadings, and as above formulated. The first six grounds are embraced in the issue of *res judicata*.

1. First, then, as to the plea of *res judicata*. It will be observed from reading the act incorporating the railroad company that every condition relating to the validity of the bonds was a condition precedent to their delivery; no condition was to be complied with after delivery. The conditions as to the delivery of the bonds were all precedent; not subsequent. The act has all the earmarks of having been carefully drawn so as to require the railroad company to comply with every condition on which it was entitled to receive the bonds, before they should be delivered.

Likewise, every condition imposed upon the railroad company by the proposition submitted to the voters of the county, was a condition precedent to the delivery of the bonds. In this respect the charter and the proposition submitted to the voters, were identical. It follows, therefore, that if the bonds were properly delivered, they are and must be the valid obligations of Estill County.

If these questions were all raised and decided in the suit of Young v. Conroy and others, in the Louisville Chancery Court, above referred to, the judgment in that action constitutes a bar to any relitigation of the questions.

That action was originally filed against Conroy, the trustee; the railroad company; the construction company that was building the road, and the Louisville Trust Company, as assignee of the construction company; and all of those defendants were served with process in Jefferson County. Estill County was not a party to that action, originally. The pleadings in that case are very voluminous; but the petition alleged, in substance, that the railroad company had complied with all the stipulations. and conditions of the contract which were prerequisite to the delivery of the first 50 bonds, in that it had completed the railroad to a point within 600 yards of Irvine, and had run a passenger train over it from Louisville to Irvine, within the time prescribed by the proposition submitted to the voters. Estill County intervened in said action, and first objected to the jurisdiction of the court; but the court having decided that it had jurisdiction, Estill County answered to the merits.

In its answer the county controverted every allegation of the petition, and affirmatively alleged, in one form or another, every ground of defense upon which the appellees rely in this proceeding, except they did not rely upon the failure of the railroad company to execute the bond required by the act of April 9th, 1873, or the failure of the railroad company to make statements of its disbursements of county funds, being the seventh and eighth grounds for relief heretofore set forth. The county could not then have relied upon these two grounds, for the reason that they were conditions subsequent to the delivery of the bonds, and the disbursing of the funds arising therefrom; and, at the time said answer was filed in the suit of Young v. Conroy, said bonds had not been delivered to the railroad company or its assignee, and consequently it had not received the funds from Estill County from which it could make a statement or account as required by the statute.

Furthermore, in that action Estill County prayed that the trustee be required to surrender the bonds for cancellation, which is identical with the prayer in this case. The issues before the court, and decided in Young

v. Conroy, were stated as follows, in the opinion of the chancellor in deciding that case:

"Issues were joined between the parties, touching the validity of the bonds in controversy, and at least 47 depositions have been taken thereon. The defendant, Estill County, in its answer as amended has attempted to plead as many as eighteen separate and distinct paragraphs of defense. The court is not inclined to take up these several paragraphs *seriatim*. The substantive defenses necessary to be considered and passed upon by the court may be stated as follows:

"1. The power of the county court to submit to the voters of Estill County the order of subscription in manner and form as was done on July 19th, 1888, and as voted upon on August 11th, 1888:

"2. The alleged bribery of voters by the railway company and its effect upon the subscription;

"3. The compliance or non-compliance of the railway company or its assignee with the terms, conditions and limitations in the order of subscription within the time therein stipulated;

"4. The measure and extent of the county's rights concerning the cancellation and surrender of any part of the bonds and the recovery of the forfeiture provided for in the contract; and,

"5. Other miscellaneous questions."

In its judgment in Young v. Conroy, the court took up each issue raised by the pleadings and the proof, and disposed of it, adjudging that the railroad company and its assignees had complied with all the obligations necessary to be performed in order to entitle its assignees to recover fifty of said bonds; and it ordered Conroy, the trustee, to deliver that number of bonds to the plaintiffs. In addition thereto, it further adjudged that Estill County was entitled to the remaining 50 bonds because the railroad company had failed to complete the road to Beattyville as required by the proposition submitted to the voters; and, that it was also entitled to recover the forfeit for said failure, which consisted of two Louisville Southern Railway bonds, of the value of $2,494.00, then held by the Madison National Bank, at Richmond.

As before stated, Estill County excepted to that judgment and prayed an appeal to this court, where the judgment was affirmed.

On filing the mandate of this court in the Louisville Chancery Court, upon the return of the case, it was shown that Estill County had received the 50 bonds which were ordered to be returned to it; that it had also received the proceeds of the two Louisville Southern Railway bonds amounting to $2,494.00; and that the first 50 bonds had been delivered to Bennett H. Young and others, by whom they were subsequently sold to Stone, Bright and Curtis, the present appellants.

The substance and effect of the judgment of the Louisville Chancery Court in Young v. Conroy was, that the bonds in question were valid, and were the property of the plaintiffs in that action; and pursuant to that opinion, the judgment directed their delivery to Young and his associates. Upon the faith of that judgment Stone, Bright and Curtis bought the bonds, for value.

It will be observed, however, that the judgment of the Estill Circuit Court in this case, in effect, reverses that judgment, and orders the same bonds to be surrendered to Estill County for cancellation.

To avoid the plea of *res judicata* and sustain the judgment of the lower court in this action, the appellees rely principally upon the construction they would give section 10 of the charter, heretofore set out. They contend that this section should be construed to mean that if the railroad company failed to perform each year one-fifth of the work necessary to complete the road to Beattyville, and thereby to complete the road within five years, the power to levy a tax to pay the bonds did not exist, and that this question was not presented or decided in the previous case of Young v. Conroy, and is not, therefore, *res judicata*.

We cannot agree, however, that the questions raised, or the judgment entered in Young v. Conroy, did not affect the application of section 10 to the case. The fact that the railroad company was unable to complete the road to Beattyville within five years was alleged by Estill County in its several answers filed in Young v. Conroy, and proof was taken upon that issue. In its answer filed therein on January 3rd, 1895, Estill County expressly relied upon section 10 of the charter and the alleged failure of the company to comply therewith, in bar of the plaintiff's right to recover the first 50 bonds. This was only two months before the expiration of the five years in which the railroad company might complete

the road to Beattyville. The court, however, both in its opinion and judgment, held that while the company had completed the road to Irvine, it had not completed the road from Irvine to Beattyville within the time provided by section 10; and, because of that failure, the judgment directed the surrender of the last 50 bonds to Estill County for cancellation, and the forfeiture of the two bonds, as above recited.

So, it will be seen that the rights of the parties under section 10 of the charter were not only passed upon, but were, in a large measure, decided favorably to the appellees.

These facts appear from the judgment entered in Young v. Conroy, which, among other things, held "that Estill County has no claim whatever to said (50) bonds or coupons, or any part thereof, and it is hereby declared and adjudged forever barred of any such claim or right."

The judgment contained this further declaration: "It is further considered and adjudged that the railroad company and its assigns herein failed to fulfill the terms and conditions of said subscription in so far as it was required to construct said railroad from said point near Irvine to the Lee County terminus (Beattyville) of said railroad, in time to earn the remaining fifty bonds of said 100 bonds delivered to said Conroy, and that said railroad company is not, nor are its assigns, entitled to any part of said remaining 50 bonds deliverable as aforesaid upon the completion of said railroad to said Lee County terminus, within the time prescribed as aforesaid."

The judgment then proceeded to require the remaining 50 bonds to be surrendered for cancellation, as above recited.

It would seem, therefore, that if it were possible for a judgment to be conclusive of the rights of Estill County as to all of these bonds, including the 50 bonds surrendered to the county, the judgment of the Louisville Chancery Court, in Young v. Conroy, was such a judgment. Its provisions against the county are no less binding than the provisions in favor of the county.

To avoid the effect of that judgment, appellees insist further that Young v. Conroy was a suit only for the possession of the bonds, and that it did not pass upon the question of their validity, or whether the railroad

·company had complied with its contract to the extent that it was entitled to the bonds. But those questions were necessarily involved in that case, since Young and his associates would not have been entitled to recover the bonds unless they had complied with their contract in building the road; and those very questions were raised in the pleadings, and necessarily decided by the court.

It is hardly necessary, at this late day, for us to go into an elaborate discussion of the rule of *res judicata;* it has been frequently announced by this court, as well as by most of the courts of last resort, and is practically uniform in its scope and application.

The rule of *res judicata* means this: that where a question or a fact is once litigated and determined by the judgment of a court of competent jurisdiction, no fact or question that was therein litigated, or could have been litigated, can thereafter be relitigated by the same parties, or their privies.

The rule was recognized by this court in many cases. See Talbott v. Todd, 5 Dana, 190; Honaker v. Cecil, 84 Ky., 202; Hall v. Forman, 85 Ky., 509; Davis v. McCorkle, 14 Bush, 753; Hardwicke v. Young, 110 Ky., 504; Elswick v. Matney, 132 Ky., 294; Louisville Gas Co. v. The Kentucky Heating Co., 142 Ky., 254; Jefferson, Noyes & Brown, v. Western National Bank, 144 Ky., 63; Green County v. Lewis, 157 Ky., 495; Wood v. Sharp's Admr., 159 Ky., 47; United States Fidelity & Guaranty Co. v. Carter, 158 Ky., 737.

In Wood v. Sharp, *supra,* we quoted the rule as laid down in 25 Cyc., 1294, to the following effect:

"A judgment on the merits rendered in a former suit between the same parties, or their privies, on the same cause of action by a court of competent jurisdiction is conclusive, not only of every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in the action. A party, therefore, must present in one action all the reasons, grounds and evidence which he may have to support his claim or defense, and, if he has several claims or title to the property in controversy, he must assert them all. Again, if a party is brought into a case and has a fair legal opportunity to present and enforce any claim he may have in relation to the subject matter, he must avail himself

of it, and whether as an original party, or an intervener, he must present his whole case, extending his claims so as to embrace everything that properly constitutes a part of his cause of action, or defense. Further, a plaintiff must recover in one action all he is entitled to, and if he is dissatisfied with the result, he cannot bring a new suit to recover something more on the same cause of action.''

And, in Southern Pacific Co. v. United States, 168 U. S., 149, the rule was stated as follows:

''The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground for recovery, cannot be disputed in a subsequent suit between the same parties, or their privies; and even if the second suit is for a different cause of action the right, question, or fact, once so determined, must as between the same parties, or their privies, be taken as conclusive, especially so long as the judgment in the first suit is unmodified. This general rule is determined by the very object for which civil courts have been established, which is to secure repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order, for the aid of judicial tribunals would not be invoked for the vindication of the rights of persons and property, if as between the same parties, or their privies, the conclusiveness did not attend the judgments of such tribunals in respect to all matters properly put in issue and actually determined by them.''

The real question presented in this case was the same as that presented in Young v. Conroy, viz., were the first 50 bonds legally earned and a valid obligation of Estill County? All other matters that were or can be raised are only incidental to this controlling question. And, as the judgment in that case answers this question in the affirmative, it is necessarily conclusive against every objection that is now raised against these bonds.

Furthermore, the precise question presented by the plea of *res judicata* was presented and decided adversely to appellees' contention in the case of Embry v. The County of Estill in the United States Circuit Court of Appeals for the Sixth Circuit in 1902, and reported in 112 Fed. Rep., 882. In that case, the county of Estill defended an action by Embry to recover on coupons clipped from some of these same bonds; and the grounds there

relied on as a defense were the same as the first six grounds relied on in this case.

In his reply Embry relied upon the judgment in Young v. Conroy as conclusive of the question, and the Circuit Court of Appeals sustained the plea and held the judgment in Young v. Conroy a complete bar to any further litigation of those questions.

In its opinion the court, composed of Judges Lurton, Day and Wanty, said:

"The claim that the requirements of the contract regarding the building of the road before the bonds might be delivered had not been complied with, as well as every other question sought to be litigated here, was adjudicated in the case of Young v. Conroy, in the Court of Appeals of Kentucky, adversely to the defendant when the delivery of the bonds was decreed. The question of the jurisdiction of the Louisville Chancery Court over the parties and its authority to determine the questions presented in that suit were passed upon after a voluntary appearance of this defendant, and the judgment there is binding upon it here. The plaintiff in this action is an assignee of these coupons after they became due, and it is contended that the judgment, even if it is binding between the parties to the cause litigated, is not between the parties to this action. The plaintiff in this action purchased the coupons from the plaintiff in the cause wherein they were adjudicated valid, and is therefore a privy to whom all the advantages and infirmities attaching from that judgment inure.

"The cases in the United States Supreme Court illustrating this rule are reviewed in the opinion of Justice Harlan in the case of Southern Pac. R. Co. v. United States, 168 U. S., 1, 18 Sup. Ct., 18, 42 L. Ed., 355, in which he announces the general rule, which disposes of every question raised by the defendant here, as follows:

" 'A right, question, or fact, distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact, once determined, must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.'

"See also City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S., 371, 17 Sup. Ct., 905, 42 L. Ed., 202; and Union & Planters' Bank v. City of Memphis (C. C. A.), 111 Fed., 561."

The view there held is sound and must prevail here.

2. Furthermore, the question of the correctness of the judgment in Young v. Conroy is not open to investigation; it is binding whether it be right or wrong. In either event, the rule of *res judicata* applies.

In Thompson, Judge, v. Louisville Banking Co., 21 Ky. L. R., 1611, 55 S. W., 1080, this court said:

"The opinion rendered in these cases is the law of the cases, however erroneous it may have been. The fact that it was overruled in a subsequent case between other parties destroys it as a precedent in other cases; but it is nevertheless binding on the parties to this controversy. The rule is elementary that a matter once litigated and determined cannot be relitigated by the same parties."

See also Cain v. Union Central Life Ins. Co., 123 Ky., 59, 124 Am. St. Rep., 313; Quigley's Trustee v. Quigley, 161 Ky., 85; and Jefferson, Noyes & Brown v. Western National Bank, *supra.*

3. Upon the facts, therefore, as disclosed by the pleadings and proof in this case, it appears clearly and beyond a doubt that the judgment in Young v. Conroy is a complete bar to this action, unless there was some lack of jurisdiction of the Louisville Chancery Court; or unless the taxpayers are not bound by the judgment against the county.

We will, therefore, next consider, briefly, the question of jurisdiction.

The record in Young v. Conroy shows that Estill County voluntarily entered its appearance, by its county attorney, pursuant to express authority given by the fiscal court of Estill County. It first raised the question of jurisdiction, and after that question was decided adversely to it, it answered to the merits. The affirmance of that judgment by this court necessarily affirmed the part of the judgment which held that the Louisville Chancery Court did have jurisdiction.

It is well settled that where the question of jurisdiction is raised and disposed of in the judgment, the question of jurisdiction is also *res judicata* and cannot be questioned in any subsequent litigation.

In *Ex Parte* Harding, 219 U. S., 369, Chief Justice White, speaking for the court, said:

"The doctrine that a court, which has general jurisdiction over the subject matter, and the parties to a cause of action, is competent to decide questions arising as to its jurisdiction, and, therefore, such decisions are not open to collateral attack has been so often expounded (Dowell v. Apperson, 152 U. S., 327 and 337, and cases cited), and has been so recently applied that it will be taken as elementary and require no further reference to authority. The same rule is laid down in 23 Cyc., 1088 (where numerous authorities are cited), viz:

" 'Where the court judicially considers and adjudicates the question of its jurisdiction, and decides that the facts exist which are necessary to give it jurisdiction of the case, the finding is conclusive and cannot be controverted in a collateral proceeding.' "

Moreover, it is clear as an original proposition that, under section 78 of the Civil Code of Practice, the Louisville Chancery Court had jurisdiction of the case of Young v. Conroy. That section provides that an action which is not required by sections 62 to 77, inclusive, to be brought in some other county (and that action was not embraced in any of said sections), might be brought in any county in which the defendant, or in which one of several defendants, who may be properly joined as such in the action, resided or was summoned. In that case, the Louisville Trust Company, as assignee of the Ohio Valley Contract & Improvement Co., had assigned the right of the latter company in the bonds in question to General Young and his associates, and it was, therefore, not only a proper, but necessary, party.

Furthermore, the railroad company also maintained an office in Jefferson County; and both of the above named defendants were served in that county.

And, as heretofore stated, Conroy, the trustee, voluntarily appeared and answered to the merits in said court, without objecting to its jurisdiction.

The allegations that jurisdiction in Young v. Conroy was obtained by fraud, and that Estill County was coerced into entering its appearance, are supported by no proof; and, as we understand the argument, these claims have been abandoned by the appellees.

4. But, it is insisted that this is an action to enjoin the levy and collection of a tax, and that under the rule

that a determination for or against a tax for one year is not a bar to a suit against a like tax for another year, the judgment in Young v. Conroy is not a bar to this action. In this connection it is further insisted that the judgment in Young v. Conroy, although it might be conclusive as against Estill County, is not binding upon the taxpayers of that county, who are the real parties in interest and nominally were not parties to that suit. But the fiscal court, the county judge, and the county attorney are the parties upon whom the law imposed the duty of looking after the business affairs of the county. Ky. Const., sec. 144; Ky. Sts., secs. 1834, 1840, *et seq.*

That the taxpayers of a county are bound by a judgment against the county is not only well settled, but would seem to be so plain a proposition as to need little argument. If a judgment against the county in its corporate capacity does not bind the taxpayers composing the county, then it would be difficult to imagine what efficacy could be given to such a judgment.

The question, however, is not an open one in this jurisdiction, since the case of Henderson Bridge Co. v. Henderson County, 116 Ky., 164.

In that case this court said:

"The rule is thus stated in Freeman on Judgments, section 178: 'The position of a county or municipal corporation towards its citizens and taxpayers is, upon principle, analogous to that of a trustee towards his *cestui que trust,* when they are numerous, and the management and control of their interests, are by the terms of the trust committed to his care. A judgment against a county or its legal representatives in a matter of general interest to all its citizens is binding upon the latter, though they are not parties to the suit.'

"To the same effect is Black on Judgments, section 584. The principle stated in these sections is that a judgment against a county or its legal representatives in a matter of general interest to all the people of the county is binding not only on the official representatives of the county, but on all of its citizens, though not made parties defendant by name; otherwise there would be no end of litigation." (p. 177.)

In 23 Cyc., 1269, the rule is stated as follows:

"A judgment for or against a municipal corporation, in a suit concerning a matter of general interest to all citizens and taxpayers thereof, as the levy and collection

of taxes, or public property, its title, character, or boundaries is binding not only upon the municipality and its officers, but also upon such citizens and taxpayers, in so far as concerns their rights or interest as a member of the general public, although not in respect to rights which they hold as individuals, peculiar to themselves, and not shared with the public. And subject to such limitations, a judgment between certain residents or taxpayers and the municipality may be conclusive on all other citizens similarly situated, and where an action between individuals concerns public interest or rights and the municipality is represented in the litigation by its proper officers and takes part in the prosecution or defense of the action, it is estopped by the results.''

The rule is well stated in Freeman on Judgments, 3rd ed., sec. 178, as follows:

''A judgment against a county or its legal representatives, in a matter of general interest to all its citizens, is binding upon the latter, though they are not parties to the suit. A judgment for a sum of money rendered against a county, imposes an obligation upon the citizens which they are compelled to discharge. Every taxpayer is a real, though not a nominal, party to such judgment. If, for the purpose of providing for its payment, the officers of the county levy and endeavor to collect a tax, none of the citizens can, by instituting proceedings to prevent the levy or enforcement of the tax, dispute the validity of the judgment, nor relitigate any of the questions which were or which could have been litigated in the original action against the county.''

To the same effect see Bear v. County Commission, 122 N. C., 454, 65 Am. St. Rep., 711; Harshman v. Knox County, 122 U. S., 319; Sauls v. Freeman, 24 Fla., 209, 12 Am. St. Rep., 190; Town of Lyons v. Cooledge, 89 Ills., 529; Cannon v. Nelson, 83 Iowa, 242; McEntire v. Williamson, 63 Kan., 275; Taxpayers v. O'Kelly, 49 La. Ann., 1043; People v. Holladay, 93 Cal., 241, 27 Am. St. Rep., 186.

5. It will thus be seen that every question thus far discussed was, in fact, if not in express terms, disposed of upon the merits in Young v. Conroy. The only two defenses which are new in this litigation, and which were not considered in Young v. Conroy, are the seventh and eighth grounds heretofore designated, which relate to the alleged failure of the company to execute the bond

as required by the act of 1873, and its failure to render to the county a written report showing the disposition of the money realized from the bonds.

So much of the act of 1873 relied upon, as is material to this discussion, reads as follows:

"Hereafter before it shall be lawful for any county judge, or other person, whose duty it is to issue bonds of any county, city, town or precinct in payment of any stock subscribed by any county, city, town or precinct in aid of any railroad company, turnpike road company, or other public improvement, the persons to whom such bonds are to be delivered, or money paid, shall enter into a covenant with good, solvent and sufficient securities payable to the Commonwealth of Kentucky for the use of such county, city, town or precinct, and conditioned that said bond or money so issued and delivered shall be faithfully and honestly applied to the object for which the same were originally subscribed, and for which said bonds were issued, or said money, or appropriation voted, and it shall be the duty of said company on or before the first day of January in each year after the construction of the enterprise to which such subscription was made, to furnish the county court of any county, and the authorities of any city or town making such subscription, a balance sheet showing the receipts and disbursements of said county for said subscription and how disbursed during the preceding years." Gen. Sts. (1881), p. 843.

That this statute has no application to this case is plain, for several reasons. In the first place, the enabling act expressly provided that the railroad company should actually perform its obligations before it should be entitled to receive any of the bonds, and, the proposition under which the county subscription was made, contained a like provision.

Inasmuch, therefore, as it appears from the record in Young v. Conroy, that the bonds were not delivered until after it had been finally determined that the plaintiffs therein were entitled to receive the bonds, because the railroad company had performed all the conditions required both by the act and the proposition submitted to the voters, there was no case upon which the act could operate.

The act of 1888 which incorporated the railroad company safeguarded the interests of the county even

stronger than the general act of 1873; and even if the latter act applied to this case, the time of its application never arrived, because the bonds were not delivered by the trustee until several years after the completion of the railroad. There is no claim that Edward Conroy, the trustee, did not execute a bond in strict compliance with the statute; on the contrary, the record shows he did.

6. That part of the statute which requires a company to make reports to the county showing receipts and disbursements of a county subscription, could not have been raised in that case, and cannot be raised in this case, for the reason that nothing was ever received until the entry of the judgment in that case, holding that the bonds were valid, and ordering their delivery. The act of 1873 contemplated the case of a condition subsequent to the delivery of bonds, while the act of 1888, under which these bonds were earned, made the completion of the road a condition precedent to the delivery of the bonds; and the condition precedent, having been satisfied, the act of 1873 had no application.

It will thus be seen that every question urged by the appellee in support of this action really has been disposed of adversely to them in Young v. Conroy.

7. It is hardly necessary to discuss, seriously, the proposition that the order of the fiscal court of Estill County, entered August 24th, 1891, directing Conroy not to deliver the bonds until that court should so direct, was of any force whatever, since the subsequent proceedings of the Louisville Chancery Court in Young v. Conroy determined that Young and his associates were entitled to the bonds, and required Conroy as trustee, who was a party to that action, to deliver them. The fiscal court of Estill County is a ministerial and executive body, and it could not judicially determine and pass upon the rights of the claimants to the bonds, by an *ex parte* order. This proposition would seem to be too plain for serious discussion.

8. Aside from the construction of the Enabling Act of 1888, and the proposition submitting the question to a vote, this entire case is based upon an allegation of fraud in the election in which the proposition to make the subscription on behalf of the county was carried. In addition to the plea of *res judicata* the appellants interposed a plea of limitation to this action, based upon

section 2519 of the Kentucky Statutes, which provides that in actions for relief for fraud or mistake, the cause of action shall not be deemed to have accrued until after the discovery of the fraud or the mistake, but that no such action shall be brought ten years after the time of making the contract, or the perpetration of the fraud. As this election was held on August 11th, 1888, and this action was not brought until June 18th, 1913, nearly 25 years thereafter, it is clearly barred by limitation.

Moreover, in the case filed by Estill County against the railroad company, in the Estill Common Pleas Court in 1891, as above pointed out in this opinion, the ground upon which the county sought to stop the delivery of the bonds was fraud perpetrated in the election of 1888.

Under the statute above quoted the time of the discovery of the fraud can have no bearing upon this case, since more than ten years have elapsed since the perpetration of the alleged fraud. But, if the question of first knowledge of the fraud could be now considered, it must be decided against the claim of the appellees, because it appears from the record of the Estill County suit of 1891 that the claim of fraud was then a matter of general public information in Estill County. It would be a travesty upon justice and common sense to say that the question of fraud perpetrated in a county election in 1888 could be raised for the first time, and litigated in 1913. The statute was intended to prevent just such an anomalous situation.

See also Salve v. Ewing, 1 Duv., 272; Brown v. Tinsley, 14 Ky. L. R., 745, 21 S. W., 585; Brown v. Brown, 91 Ky., 641; Estep v. Estep, 124 Ky., 421; Fox v. Hudson, 150 Ky., 115; Schoolfield v. Provident Savings Life Assurance Society, 158 Ky., 687; Graham, Admr. v. English, 160 Ky., 375.

Furthermore, the proof wholly fails to show that the result of the election was affected by fraudulent practices, even though we should give to the material witnesses upon this subject the fullest effect claimed for their testimony as to their participation in the alleged frauds.

The charge of bribery in the election of 1888 must, therefore, fail under either of the defenses of *res judicata,* limitation, or upon the merits.

9. It having been determined that the 50 bonds sought to be canceled herein are valid obligations of Estill County, it follows that it is the legal duty of the officers of Estill County to levy and collect a tax to pay them.

This would seem to be an elementary proposition; but if there should be any doubt upon the subject, it will be removed by the following language taken from the opinion of this court in Kentucky Union Railroad Co. v. Bourbon County, 85 Ky., 110:

"But it would not avail even if the operation of the statute was limited to the question of taxation, for there can be no valid and enforceable subscription of stock by the county court on behalf of a county without the power to levy and collect taxes to satisfy it, that being the only mode by which it can be paid. And if made in the absence of such power, or in violation of the condition upon which it is delegated, the subscription would be worthless and void."

From this review of every question presented, we are of opinion there is no merit in appellees' case.

Judgment reversed and cause remanded, with instructions to the chancellor to dismiss the petition.

The whole court, except Judge Turner, sitting.