### Reeves v. Jones et al.

(Decided Dec. 20, 1935.)

R. L. BRONAUGH and WEBB & WEBB for appellant.

JOHN S. DEERING for appellees.

Opinion of the Court by Chief Justice Clay— Reversing.

This suit was brought by Lewis Reeves against W. K. Jones and others to cancel an $875 note, or to reform the deed in which a lien was retained to secure the same by striking therefrom the sum of $875 and writing in its place the sum of $65.26. The basis of the action was want of consideration. In addition to a general denial and a plea of negligence on the part of Reeves in failing to present for collection the check given for the note, Jones also interposed a plea of res judicata, to which a demurrer was sustained. On final hearing Reeves was denied the relief prayed, and he appeals.

The evidence bearing on the question may be summarized as follows: At the time of her death, Fannie P. Griggs owned three pieces of real estate in Wilmore, Jessamine county. Her heirs were her daughters, Minerva Groves and Ida Moore, and her grandson, Lewis Reeves. She and her husband, who had previously died, owed debts aggregating something over $800. For the purpose of paying these debts arrangements were made to procure a loan from W. K. Jones. To secure the loan one of the pieces of property was conveyed to Lewis Reeves, subject to a lien note for $875, payable to Jones. Before the transaction was carried out the banking holiday was declared. On March 7, 1933, the

deed and note, together with Jones' check for $844.38, representing the loan of $875 less the interest for six months, were turned over to the Wilmore Deposit Bank, of which J. L. Gaugh was the cashier. According to Reeves the check was to be placed to his credit when the bank opened for business. According to Jones, he got the deed about a week after the papers were turned over to the bank, and left the deed in the county clerk's office, saying to the young lady in charge, "Tell the clerk that I left the deed here to be recorded." He had Reeves' money for the purpose of paying the recording fee, but did not pay the fee or have a revenue stamp placed on it. The deed was not actually recorded until the following May. According to Cashier Gaugh, Dr. Jones' check, payable to and indorsed by Reeves, and the Reeves note, payable to Dr. Jones, were delivered to him with instructions that when the deed was recorded the check of Dr. Jones was to be placed to Mr. Reeves' credit and the Reeves note was to be delivered to Dr. Jones. It further appears that on March 7th, Reeves drew three checks on the bank: One payable to himself for $12.75, one payable to Minerva Groves for $12.76, and one payable to Ida Moore for $12.75. These sums represented the excess that was going to the heirs after the payment of the debts owing by the estates of Fannie P. Griggs and her husband. Instead of these checks being paid by the bank, they were paid by Jones, who furnished the cash to Reeves, taking his receipt therefor, but not retaining the checks. The bank, opened for business on March 20, 1933, but did not do any business after March 25, 1933. Jones was afraid Reeves might collect the $844.38 without paying him the $38.27 advanced on the three checks. When the holiday was over on March 20th, Jones went to Gaugh and first said, "This check can now be credited to Reeves' account, I took the deed up to have it recorded." During the conversation Jones told Gaugh that he wanted the three Reeves checks that he paid in cash eliminated from the $844.38 check. Gaugh told Jones that he could not eliminate them; that Mr. Reeves would have to do that, as the bank could not stop payment on Reeves' checks. Gaugh was under the impression that Jones told him to hold the matter up until he heard from Mr. Reeves. He said he wanted to place the amount to his credit, and either stop the payment of the check or deduct the check from it. Gaugh told Jones that he could

not do it except under instructions from Reeves. The check was never placed to the credit of Reeves, nor was the note payable to Jones ever delivered until after the bank went into liquidation. Dr. Jones was in the habit of leaving notes with the bank, and calling for them when he needed them. Jones asked him to stop payment on the three checks, but did not tell him to stop payment on the other check. Jones did say that he could deposit the check to Reeves' credit, but wanted the other checks eliminated. On March 22, 1933, and after his conversation with Gaugh, Dr. Jones wrote the following letter which was addressed to Reeves at Glasgow, Ky., and was received by him on March 24th:

"You will have to send me the 3 checks that you have that are paid amounting to $38.27, the check I gave you covers the three that I paid in cash, the check will be stopped payment on until I get the paid checks, I think you understand. Let me hear from you at once."

On his attention being called to the following in his letter, "the check will be stopped payment on until I get the paid checks," and being asked, "What check did you have reference to?" Jones said, "I guess that means the main check." He added, however: "I did not have any idea of stopping payment, I gave him the check in good faith." Acting on Gaugh's advice that he could not stop the Reeves checks, he then wrote the letter dated March 22, 1933, stating that he would stop payment on the last check if he did not get the others.

In support of the judgment below, Dr. Jones insists that the plea of res judicata should have been sustained. The plea is based on the following facts: On May 13, 1933, Jones brought suit against Lewis Reeves, Charles Metcalf, special deputy banking commissioner, J. L. Gaugh, cashier of the Wilmore Deposit Bank, and the Wilmore Deposit Bank, in which he set up all the facts concerning the transaction with Reeves and the bank, and asked that Charles Metcalf, the special deputy banking commissioner, be required to transfer the $875 standing in his name to the credit of Lewis Reeves. Lewis Reeves, who was made a party to the action, demurred to the petition on the ground that no personal judgment was sought against him, which demurrer was sustained by the court. The

parties to that action proceeded to judgment, and Charles Metcalf, the special deputy banking commissioner for the Wilmore Deposit Bank, was ordered to transfer on the books of the bank from the account of W. K. Jones to the account of Lewis Reeves the sum of $875 as of the date February 27, 1933. Said judgment was duly entered on the order book of November 10, 1933, was signed by the judge, is valid and in full force and effect, and has never been reversed, vacated, or appealed from. The plea of res judicata is rested on the well-established rule announced in Stone v. Winn, 165 Ky. 9, 176 S. W. 933, and many other cases, that a judgment on the merits rendered in a former suit between the same parties or their privies on the same cause of action by a court of competent jurisdiction is conclusive not only of every matter which was offered or received to defeat the claim, but as to every other item which might with propriety have been litigated and determined in the action. It may be conceded that if Reeves' demurrer had been overruled and he had then declined to answer, or he had failed to demur or answer, an entirely different case would be presented. Though a party to the action, his demurrer was sustained, and that order not having been set aside, he was not concluded by the subsequent judgment rendered against the other parties defendant.

It follows that the court did not err in sustaining the demurrer to the petition.

The remaining question is: Should the loss occasioned by the failure of the Wilmore Deposit Bank fall on Reeves, the payee of the check, or Jones, the drawer of the check? The argument is that Gaugh, Reeves' agent, was guilty of negligence in not presenting the check for payment between March 20th and March 25th, when the bank was open for business. If this were all, there might be merit in the contention; but let us view the case in the light of Jones' conduct and the attending circumstances. Gaugh was the agent of both parties in carrying out the transaction. He says that his instructions were not to place the check to Reeves' credit or to deliver the note to Jones until the deed was recorded, and the deed was not recorded until long after the bank went into liquidation. Nor is that all. Though when the bank opened Jones first said, "This check can now be credited to Reeves' account, I

took the deed up to have it recorded,'' he told Gaugh in the same conversation that he wanted the three checks that Reeves had given eliminated from his check, or payment on them stopped. Gaugh told Jones he would have to take the matter up with Reeves, and Jones said he would write to Reeves in regard to it. Thereupon Jones, acting on Gaugh's advice, wrote the letter of March 22, 1933, stating that he would stop payment on the last check if he did not get the paid checks. It will thus be seen that the case is one where Gaugh was the agent of both parties, and his failure to place the check to Reeves' credit when the bank opened was not due to any fault or oversight on his part that could be attributed to Reeves, but was due solely to the fact that Jones was endeavoring to protect himself against loss of the cash advanced to pay the three checks that Reeves had given, and at the suggestion of Gaugh had taken the matter up with Reeves, with the view of its adjustment before the transaction was finally closed. While the negotiations were going on, and before Jones reported further to Gaugh, the bank again closed without the check being deposited to Reeves' credit. In view of these circumstances we are constrained to hold that the loss should fall on Jones instead of Reeves

The case being one where there was no consideration for the lien note except to the extent of the three Reeves checks and the interest due on the $875 note, it follows that Reeves should have been granted the relief prayed.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.