WESTERN RANDOLPH COUNTY ROAD IMPROVEMENT DISTRICT

*v.* CLIFFORD.

Opinion delivered October 10, 1921.

1.  CONTRACTS—ALTERATION.—Where H agreed in writing to purchase the entire anticipated bond issue of a road improvement district created by a special act, and deposited a certified check "to guarantee compliance with the terms of the contract", the check to be held in trust until the bonds were tendered in compliance with the contract, and subsequently the Legislature materially changed the act creating the district, and thereby substantially altered the contract itself, H's estate was absolved from liability on the certified check.

2.  HIGHWAYS—LIABILITY OF DISTRICT IN CONTRACT.—A road improvement district was not bound by its contract to sell a contemplated bond issue entered into in advance of a contemplated assessment of benefits.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Page, Campbell & Davis,* for appellant.

No time was specified in contract for delivery of bonds, hence a reasonable time, in view of all the circumstances, was intended. Page on Contracts (2nd. Ed.) Vol. 4, p. 2647; 33 Conn. 1; 101 Ala. 14; 13 N. Y. S. 922. A tender of the bonds within eight months was within a reasonable time, as there were unusual circumstances connected with the case causing the delay.

A formal tender of the bonds was unnecessary, since appellant was notified that they would not be accepted. 96 Ark. 156; 93 Ark. 497; 68 Ark. 505; 132 Ark. 84.

The refusal to accept the bonds was not justified by changes in the law, as the contract was not thereby made more burdensome. 109 Ky. 408; 125 Md. 450; 128 N. Y. S. 697; 24 Pa. Dist. 477; 42 N. Y. 126; 13 C. J. p. 646, §720; Page on Contracts (2nd. Ed.) Vol. 5, p. 4765.

The reason for the refusal to accept the bonds was because of the break in the bond market, but changing events is no ground for preventing specific performance of a contract. 144 N. Y. 152.

Not necessary for the district to probate claim against Hahn's estate. Upon the refusal of the representative to accept the bonds, the contingency happened which gave the district the right to cash the certified check. It then became an absolute claim, not against the estate of Hahn, but against the bank on which the check was drawn. 116 Ark. 1; 5 R. C. L. pp. 528-9, §§48-50.

*John F. Clifford,* for appellee.

The very nature of the contract makes time ·its essence, regardless of whether it is expressly so stated or not. 105 Ark. 626; 134 U. S. 68; 23 R. C. L. p. 1371; 11 L. R. A. 526. The words "as expeditiously as possible," should receive a literal construction. 126 Ark. 46.

After the passage of the amendatory legislation the board could no longer deliver the article contracted for, and they necessarily tendered comething not contemplated by the original contract, which the appellee was not bound to accept. 85 Ark. 596; 13 C. J. 642-3.

The law does not place upon the representative of Hahn's estate the duty to continually notify the district that it is expected to comply with its contract. 62 Ark. 316; 76 Ark. 570; 89 Ark. 204.

McCULLOCH, C. J. Appellant is a road improvement district in Randolph County created by a special act of the Legislature, approved February 27, 1919 (Road Acts 1919, p. 356), and on June 17, 1919, the district entered into a written contract with appellee's intestate, E. J. Hahn, for the sale of bonds to be issued for the purpose of raising funds to be used in the construction of the improvement. It was stipulated in the contract that the purchaser should accept the "entire anticipated bond issue in the sum of $400,000, or so much as the district may require, the bonds to be serial and run from one to twenty-five or thirty years, as the district may elect, to be dated October 1, 1919, and to bear interest at the rate of six per cent. per annum, payable semi-annually." It was further agreed in the contract that

the purchaser should, within ten days, deliver to the secretary of the board a certified check, in the sum of $10,000, "to guarantee compliance with the terms of the contract," the check not to be cashed, but to be held in trust until the bonds were tendered in compliance with the contract. Still another stipulation in the contract was that the commissioners agreed "to use their best efforts to have the assessment of benefits confirmed and the bonds issued with the least possible delay." Hahn delivered to the secretary of the board of commissioners a certified check for the sum of $10,000 on a bank in Little Rock, in compliance with the terms of the contract, and, shortly thereafter, before anything else had been done under the contract, Hahn died. The subsequent dealings with the district were conducted by Hahn's personal representative and those associated with him in the business. The bonds were never accepted by Hahn's representative, and this is an action instituted by the administrator to restrain appellant district from collecting the check and to restrain the bank from paying the same. The chancellor granted the relief prayed for in the complaint, and the district has appealed.

There was a clause in the contract to the effect that the purchaser of the bonds should make advances to cover the preliminary expenses of the district, which advances were to be paid out of the first issue of bonds. Sums of money were furnished from time to time, aggregating about $15,000, and negotiable promissory notes were executed by the district to cover the same, but it does not appear in this record what became of those notes, and they are not involved in the present litigation—the sole subject-matter of the suit being the check deposited by Hahn as a guaranty for the performance of the contract.

The district covered a large area in Randolph County, said to constitute about four-fifths of the county, and the original statute creating the district provided for surfacing the specified roads with crushed rock and

constructing necessary bridges along certain roads in the district. There were eleven roads mentioned, which were to be improved. The statute also contained a provision that the average cost of the road should not exceed $3,000 per mile, and it was estimated by the engineer during the progress of the preliminary work that the improvement could not be constructed within the limits thus specified as to cost. An amendatory statute was enacted at the extraordinary session of the Legislature in January, 1920, providing that the limitation of $3,000 per mile upon the cost of the improvement was to be exclusive of the cost of bridges and culverts. The amendatory statute provided also for the improvement of three additional roads, making fourteen in all, instead of eleven, as originally provided for, and it also provided that the roads described should be graded and drained, and that such parts of them as the commissioners deemed advisable should be surfaced with gravel or crushed rock. The new act also provided for repairing and strengthening the bridge across Black River. The final estimates and plans of the engineers were filed with the commissioners April 26, 1920, and were approved by the commissioners on that day. The lists of assessments of benefits were filed with the county clerk on May 21, 1920, and, after publication of notice, the same were completed on June 8, 1920. In a letter dated March 25, 1920, the personal representative of Hahn's estate indicated to the commissioners a refusal to accept the bonds, it appearing that at that time there had been very considerable depreciation in the market price of bonds of this character. Further correspondence took place between the parties, but those representing the Hahn estate persisted in the refusal to accept the bonds, formal tender of which was made after the approval of the final plans and specifications and the completion of the assessment of benefits.

It is contended by counsel for appellee that the Hahn estate was absolved from liability under the con-

tract on two grounds: First, that the contract itself was altered by the amendatory act of February 4, 1920; and, second, that the district committed the first breach by delaying an unreasonable length of time before putting itself in an attitude to make delivery of the bonds. We are of the opinion that the first contention of counsel is correct, and it is therefore unnecessary to discuss the second. Nor is it necessary to discuss the question how far the parties were bound by the executory features of the contract, as we are dealing now with the sole question of the right of Hahn's estate to prevent the collection of the check which had been deposited with the district as a guaranty of the performance of the contract. It is to be remembered that the purchaser obligated himself to accept the entire anticipated bond issue of the district, estimated to be the sum of $400,000 "or as much more as the district may require." The obligation was to accept the entire bond issue, whatever it might be under the law and the necessities of the district as then existing. The changes wrought by the new statute were very material and constituted a substantial alteration of the contract itself. It removed certain limitations as to the cost of the improvement and enlarged the scope of the improvement by providing for the improvement of three additional roads. It also changed the purpose from one to surface all the roads with crushed rock to the surfacing only of such roads as the commissioners might decide upon. This is not a case, as argued by counsel for appellants, where the law has merely imposed additional obstacles or burdens on the performance of a contract. Therefore, the cases cited in the brief of counsel are not applicable. It is a case where the contract itself has been changed by authority of law, and it is unimportant that this change was not a voluntary one on the part of the district itself, but was compelled by the lawmakers. The district is a creature of the law, and any changes made by the lawmakers were tantamount to changes made by the district itself. The

original statute, creating the district and the powers and duties conferred and imposed thereby, entered into the contract and became a part thereof, and a change in the law necessarily constituted a change in the contract, in so far as it altered the obligations of the parties. In this respect, the case presents merely the familiar question of one party attempting to change the contract without the consent of the other. The difference is this, however, that in the case of individuals a change can not be made by one without the consent of the other who has a right to insist upon the performance of the contract as made; whereas, in this instance, the change is made by the sovereign power of the law which controls the action of the improvement district. Nor is there any question involved of the impairment of the obligation of the contract, for it was merely tentative, and was not binding on the district in advance of a completed assessment of benefits demonstrating that the cost of the improvement would not exceed the benefits. *Cherry* v. *Bowman,* 106 Ark. 39; *Thibault* v. *McHaney,* 119 Ark. 188.

It follows that the decree of the chancery court was correct, and the same is affirmed.