## SHAW *v.* POLK.

### Opinion delivered February 13, 1922.

1. PLEADING—EXHIBIT TO COMPLAINT.—In a suit in equity the exhibits control the averments of the complaint.

2. PLEADING—AMENDMENT.—Where a complaint in a suit in equity to foreclose a mortgage of land misdescribed the land, the action of the court in permitting plaintiff, after foreclosure, to file a petition alleging that a misdescription of the land had been given in the former proceedings, and stating the correct description, was equivalent to permitting plaintiff to amend his original complaint and to ask for a foreclosure of the mortgage by a correct description.

3. JUDGMENTS—CONCLUSIVENESS OF RECITALS.—A recital in a decree that the defendants had been duly served with summons cannot be contradicted in a collateral attack by proof to the contrary.

4. JUDGMENTS—BAR TO DEFENSES.—The decree of a court of competent jurisdiction operates as a bar to all defenses, either legal or equitable, which were interposed or which could have been interposed in the former suit.

5. JUDICIAL SALE—PURCHASER AS PARTY.—One who purchases at a judicial foreclosure sale which is invalid because the property sold was misdescribed in the notice of sale and in the deed becomes a party to the proceeding, and has a right to ask the court for a resale under a correct description, and defendants in the

original proceeding were required to take notice of all the subsequent proceedings which might affect their rights.

6.  JUDGMENTS—RIGHT OF INFANT TO SHOW CAUSE AGAINST.—The statute giving an infant 12 months after reaching full age to show cause why a judgment against it should not be vacated (Crawford & Moses' Dig., § 6290) has no application to a foreclosure decree under a mortgage upon the lands executed by the infant's ancestor.

7.  INFANTS—RIGHT TO VACATE DECREE.—A decree against an infant foreclosing a mortgage executed by the infant's ancestor is not a proceeding to which Crawford & Moses' Dig., § 6290, authorizing vacation of an erroneous decree against an infant, applies.

Appeal from Clay Chancery Court, Western District; *Archer Wheatley,* Chancellor; affirmed.

STATEMENT OF FACTS.

On the 19th day of March, 1920, appellants brought this suit in equity against appellees to cancel and set aside a deed to forty acres of land on the ground that the proceedings in the mortgage foreclosure sale under which appellees purchased were void. Appellees interposed the plea of *res judicata* and the statute of limitations.

The forty-acre tract of land in controversy was the homestead of John Denton, who died intestate in Clay County, Ark., on January 11, 1912. He left surviving him M. J. Denton, his widow, and appellants, who were his children and sole heirs at law. At his death there were two valid mortgages against the land; one for $700 to the New England Securities Company, and the other for something over $400 to J. A. Wheatley. Soon after Denton died W. D. Polk purchased the Wheatley mortgage, and then obtained a deed to the land from Mrs. M. J. Denton for the consideration of $100 recited in the deed. W. D. Polk went into possession of the land, and soon afterwards entered into an agreement with Albert Powers, one of the appellees, whereby Powers was to purchase the land at a foreclosure sale of the Wheatley mortgage and to pay off the mortgage of the New England Securities Company.

On September 8, 1913, W. D. Polk brought a suit in equity against appellants to foreclose the mortgage on the NE 1-4 of the NW 1-4 of section 14, township 20 N., range 3 E., in Clay County, Ark., given by John Denton, Linda Denton, his wife, John Denton, Jr., and Mat Denton to J. A. Wheatley to secure the payment of three promissory notes of $153.63 each. The three said notes and the said mortgage are made exhibits to the complaint. The mortgage describes the land as the SE 1-4 of the NW 1-4 of sec. 14, township 20 N, range 3 E, of Clay County, Arkansas, and the record shows that this is the correct description of the land in controversy. The said notes and mortgage given to secure the same were duly transferred by Wheatley to Polk before the foreclosure proceedings were instituted.

On the 9th day of October, 1913, a decree of foreclosure was duly entered of record in the chancery court, and it contained the same misdescription of the land as the complaint. The same misdescription is also contained in the notice of sale of the land by the commissioner, and the report of sale and deed to the purchaser by said commissioner. The report of sale which was confirmed by the chancery court shows that Albert Powers became the purchaser of the land for the sum of $1,000.

On the 7th day of September, 1915, W. D. Polk filed a pleading against appellants in the same chancery court in which he instituted the foreclosure proceedings above referred to. He sets forth in detail the mistake in the description of the land in the foreclosure proceedings and sets forth the correct description of the land. He asks that the mistake be corrected and for a cancellation of the former sale. He further asks that the land described in the mortgage be sold in satisfaction of the mortgage debt.

On the 8th day of October, 1915, a new decree was entered of record in the chancery court for the foreclosure of the land described in the mortgage, and the decree recites that the court finds that the defendants named

therein had all been served with personal summons more than twenty days before the first day of the present term, and that they have not appeared or answered. It then decreed that the sale under the former foreclosure proceedings be set aside, and that the land under its correct description be sold by a special commissioner named in the decree. The property was ordered sold on the terms and in the manner provided in the original decree.

On the 9th day of November, 1915, the commissioner made his report of sale, and in the land described as the SE 1-4 of the NE 1-4 of section 14, township 20 north, range 3 east.

On the 8th day of October, 1918, Albert Powers filed his petition in the same chancery court in which he stated that he purchased the land at said sale, but that by mistake the land was described in the notice of sale and the report thereof as the SE 1-4 of the NW 1-4, instead of the NE 1-4 of the NW 1-4, of section 14, etc. He asks that the sale be set aside, and the land be ordered resold under its correct description.

On the same day the court granted his petition and ordered the land to be re-advertised and sold to cure the errors in the former sale. The land was again advertised and sold by the commissioner, and Albert Powers again became the purchaser at the sale. The land was correctly described in the notice of sale and the report thereof. The commissioner was ordered to execute a deed to the purchaser, which was accordingly done, and the deed approved in open court on the 4th day of March, 1919. The land was sold this time for $755. Powers paid off the first mortgage in favor of the New England Securities Company. Polk and Powers have been in the possession of the land since sometime in 1912, and its rental value has varied from $300 to $400 per annum since that time. At the time of the death of John Denton all his children were of age except appellant, Minnie Shaw. The proof of appellants is not clear, whether she became of age in May, 1916, or 1917. Minnie Shaw has been

married three times, and appellees introduced in evidence her affidavit to procure a marriage license dated March 8, 1916, in which she stated her age to be twenty-one. Again in an affidavit for a marriage license, dated Nov. 1, 1920, she states her age to be twenty-five years.

The chancellor found the issues in favor of appellees, and it was decreed that the complaint of the plaintiffs be dismissed for want of equity, and that the title of appellee, Albert Powers, be quieted in the forty acres of land in controversy.

To reverse that decree appellants have duly prosecuted this appeal.

*Pope & Bowers,* for appellants.

The widow's deed to Polk amounted to an abandonment of the homestead, and possesion thereof then inured to the child Minnie. 44 Ark. 496; 40 *Id.* 393. The possession of Polk and Powers, therefore, was that of a mortgagee in possession. Powers was a mortgagee in possession from the beginning, since he went into possession under Polk and later held his possession as a purchaser at a void foreclosure sale. 7 L. R. A. 273; 64 L. R. A. 320; 142 Ark. 320.

Their right to possession ceased when the rents and profits extinguished the mortgage debt, which occurred at the end of the crop year, 1918. To proceed with a sale or pretended sale after the indebtedness was paid, was constructive fraud. 12 R. C. L. 230-231; Smith, Law of Fraud, § 1.

Appellants are entitled to the land, unless they are barred by limitations, or unless appellees are entitled to have granted their prayer to have the deed, made pursuant to the sale in 1913, reformed. On the latter proposition the decisions of this court are against them. 60 Ark. 487; 75 *Id.* 8; 86 *Id.* 443. On the question of limitation, neither the three-year, nor the five-year, nor the seven-year statute applies. The child, Minnie, did not reach majority until 1916 or 1917, and at that time a new right of entry accrued to all the heirs. 142 Ark. 230; 92

*Id.* 143. Moreover, Polk and Powers, as mortgagees in possession, were entitled to hold the lands until the rents and profits satisfied the debt, and that occurred in 1918.

There was no judicial sale in 1913 and the 5-year statute does not apply. 61 Ark. 80; 69 *Id.* 539. See also, as to the 3-year statute, 87 Ark. 502.

*Oliver & Oliver* and *C. L. Daniel, for appellees.*

1. Polk's entry was not as a mortgagee, but under the deed executed to him by M. J. Denton. If, as claimed by appellant, he took nothing by the deed, that does not alter the fact that he entered into possession under it, and that by virtue of the possession so obtained he later put Powers in possession. 110 Ark. 172-174; 3 Pomeroy, Eq. Jur. 1215; 70 Ala. 260; 39 Minn. 39. The liability of a mortgagee for rents and profits depends upon whether or not he took possession of and held the property as mortgagee. 111 Ark. 509.

2. Powers is entitled to have the first deed made in March, 1914, refunded. The mortgage which is the basis of the foreclosure suit correctly describes the land, and was made an exhibit to the complaint. In equity, where there is a variance between the complaint and exhibit, the latter will control. 31 Cyc. 563-b and authorities cited; 33 Ark. 722. Though it misdescribed the land, the decree was not void, and the order correcting it on October 8, 1915, related back and took effect from the date of the original decree. 23 Cyc. 883. See also, on the question of reformation, 28 Ark. 372; 31 *Id.* 252; 33 *Id.* 72.

3. Appellants are barred of any right to recover the surplus arising from the 1913 sale. Polk received the money and applied it on debts of Denton early in 1914, more than six years before this action was commenced. *Kitchens* v. *Jones,* 87 Ark. 502, cited by appellant, has no application whatever. See Kirby's Dig. § 5064. The burden was on appellants to show that the claim is not barred. 69 Ark. 311.

4. The decree and orders made in the case of *Polk* v. *Denton et al.* in which the Wheatley mortgage was foreclosed are *res judicatae* of all contentions made by appellants in this case. It is true that the order of October 8, 1918, does not recite that appellants were served with notice, but, in the absence of proof to the contrary, it is conclusively presumed that proper notice was served. 49 Ark. 413; 92 *Id.* 141; 72 *Id.* 101; 74 *Id.* 81; 123 *Id.* 389. They are estopped from litigating any questions which could and should have been litigated in the former suit. 76 Ark. 423; 141 *Id.* 453-458; 119 *Id.* 413; 80 *Id.* 403; 9 *Id.* 111; 97 *Id.* 450; 105 *Id.* 488.

HART, J., (after stating the facts). It is first insisted by counsel for appellants that the foreclosure proceedings commenced by W. D. Polk against appellants on September 8, 1913, are void and of no effect because the land was misdescribed in his complaint and in the notice and report of sale. Hence they contend that appellees are mortgagees in possession within the rule anounced in *Lesser* v. *Reeves,* 142 Ark. 320, and that the proof shows that they have collected sufficient rents and profits to pay off the mortgage.

In making this contention counsel have not taken into consideration the effect of the subsequent foreclosure decree made on the 8th day of October, 1915. Conceding W. D. Polk to be a mortgagee in possession, still he had a right to foreclose his mortgage. Again, conceding that the first foreclosure proceeding was invalid because the land was not correctly described, still this did not prevent Polk from amending his complaint so as to correctly describe the land embraced in the mortgage. It will be remembered that the mortgage was made an exhibit to the first complaint, and that the mortgage as exhibited contained a correct description of the land. On the 7th day of September, 1915, W. D. Polk filed his petition against appellants in the same chancery court and set forth the mistake which had been made in the former proceedings in the description of the land. He stated

the correct description of the land, and the relief prayed for was the foreclosure of the particular mortgage which was exhibited with his original complaint, and which correctly described the land.

In an action to foreclose a mortgage in equity the exhibits control the averments of the complaint. The action of the court in permitting this pleading to be filed was equivalent to giving Polk permission to amend his original complaint and ask for a foreclosure of the mortgage which was exhibited with it. *Blasingame* v. *Loudermilk,* 132 Ark. 542. Under this decision the pleading of W. D. Polk filed on the 7th day of September, 1915, was equivalent to granting him permission to amend his foreclosure proceedings.

Another foreclosure decree was entered of record on the 8th day of October, 1915. This decree recites that all the defendants had been served with personal summons more than twenty days before the beginning of that term of the chancery court. The defendants in that suit are the plaintiffs in the present suit and the appellants in this court. The decree in that case having recited that the parties had been duly served with summons, allegations to the contrary cannot avail appellants in the present suit, which is a collateral attack on that decree. *Taylor* v. *King,* 135 Ark. 43. In the last case cited it was also held that the decree of a court of competent jurisdiction operates as a bar to all defenses, either legal or equitable, which were interposed or which could have been interposed in the former suit.

When Polk obtained permission to file his amended complaint in the mortgage foreclosure proceedings on the 7th day of September, 1915, and obtained service of summons on appellants, who were the defendants in that action, it was their duty to have presented all the defenses they might have to the suit. They knew as well then as they do now that Polk had been in possession of the land and collecting the rents and profits therefrom. They then should have interposed as a defense to that action

that the mortgage had been satisfied by the collection of the rents and profits by Polk from the mortgaged premises, if such was the fact. In short, all the matters asserted by appellants in this suit might have been claimed by them and adjudicated in the foreclosure suit. Having failed to interpose any defense to that suit, they are barred by the decree in that case from seeking to adjudicate the question in this case.

Again counsel for appellants claim that the first sale made under the foreclosure decree of October 8, 1915, last referred to, is invalid because the mortgaged premises are again misdescribed in the notice of sale and the report of sale.

The record shows that Albert Powers became the purchaser at that sale, and subsequently on the 8th day of October, 1918, moved the court to set aside the sale as being invalid on account of the misdescription of the property sold and to again have the property sold by the commissioner under the foreclosure decree. His motion was granted by the chancery court on the same day that it was filed, and the land was again advertised and sold by the commissioner under the foreclosure decree. Albert Powers again became the purchaser, and the report of sale by the commissioner was confirmed by the court, and a deed was made by the commissioner to Albert Powers subsequent to the order of the court, and this deed was approved in open court.

It is the contention of counsel for appellants that this last sale is void because no notice was given to them. We do not agree with them in this contention. As we have already seen, they were duly served with summons before the foreclosure decree was made. The first sale under the foreclosure decree of October 8, 1915, was invalid because the land was not correctly described in the notice and report of sale. The land was correctly described, however, in the foreclosure decree. When Albert Powers purchased at the sale, he became a party to the proceedings, although the sale itself was invalid because the land

was incorrectly described in the notice of sale. *Miller* v. *Henry,* 105 Ark. 261, and *Purcell* v. *Gann,* 113 Ark. 332. Having become a party to the proceedings, Albert Powers had a right to ask for a resale of the land, and no notice thereof to the appellants was necessary. After appellants were served with summons as recited in the decree of October 8, 1915, they were required to take notice of all the subsequent proceedings in the case which might affect their rights. It was their duty to follow the case to its end, and, not having done so, they are not now in an attitude to complain in a collateral suit that no notice was given to them that the second order of sale would be asked. *Trumbull* v. *Harris,* 114 Ark. 493.

It is true there is evidence in the record tending to show that the appellant, Minnie Shaw, was an infant at the time the foreclosure proceedings were rendered against her and the other appellants. Her infancy, however, is not shown in the proceedings. Besides, the statute giving an infant twelve months after reaching full age to show cause why the judgment should not be vacated, Crawford & Moses' Dig., § 6277, has no application to a foreclosure decree under a mortgage upon the lands by the infant's ancestor. *Estes* v. *Lucky,* 133 Ark. 97.

Neither is it a proceeding under § 6290 of Crawford & Moses' Digest to vacate a decree for erroneous proceedings against an infant where the condition of the infant does not appear in the record.

Therefore, the decree will be affirmed.