HOWARD-SEVIER ROAD IMPROVEMENT DISTRICT No. 1
v. HUNT.

## Opinion delivered October 27, 1924.

1. JUDGMENT—RES JUDICATA.—A decree in a suit by certain taxpayers in their own right and on behalf of all other taxpayers sustaining the validity of the assessment of benefits in a highway improvement district is res judicata in another suit involving the same subject-matter and cause of action brought by other taxpayers, under Crawford & Moses' Dig., § 1098.

2. JUDGMENT—RES JUDICATA.—A judgment in a suit by a trustee for bondholders against a highway district, upholding the validity of the assessment of benefits therein, is res judicata in a suit by taxpayers of such district challenging the validity of such assessment, as the issues in both cases are the same.

3. JUDGMENT—FULL FAITH AND CREDIT TO FOREIGN JUDGMENT.—Where a judgment of a Federal court is duly pleaded and proved, it is the duty of the trial court to give it full faith and credit.

Appeal from Howard Chancery Court; L. F. Monroe, special Chancellor; reversed.

*Lamb & Frierson, D. K. Hawthorne, Daily & Woods,* and *Rose, Hemingway, Cantrell & Loughborough,* for appellants.

1. The decision of the Howard Chancery Court in the suit brought by Kennedy et al. is res. judicata. 15 R. C. L. 1035; 151 Ill. App. 245; 28 Kansas 289-291; 13 S. C. 290; 35 Conn. 526; 13 Wash. 141; 112 Fed. 705; 114 S. E. 689, 184 N. C. 471; 154 Ala. 242, 45 So. 586; 123 Ill. 122, 13 N. E. 161; 253 Ill. 625, 97 N. E. 1092; 149 Ia. 345; 128 N. W. 533; 113 Ky. 864, 69 S. W. 763; 68 S. W. 15, 16; 127 Pac. 313; 16 How. 142; Crawford & Moses' Digest, § 1098; 158 Ark. 585.

2. The decree of the United States District Court in the case of *Guardian Savings & Trust Company, Trustee,* v. *Howard-Sevier Road Improvement District No. 1,* is res judicata of the controversy attempted to be raised in this case. A judgment in a suit is a bar to any defenses that could have been pleaded, whether they were in fact pleaded or not. 19 Ark. 420; 41 Ark. 75;

41 Ark. 230.; 76 Ark. 423; 105 Ark. 488; 119 Ark. 413. There can be no valid issue of bonds until a valid assessment of benefits has been made. 150 Ark. 94; 258 Ark. 378. It was the duty of the district therefore to set up in the Federal suit the fact that there was no valid assessment of benefits, if that was a fact; and when it failed to do so, and permitted a decree to enforce the mortgage upon the assessment of benefits, the district, and the property owners as well, lost the right to contest the validity of the assessment of benefits. I Freeman on Judgments, 4th ed., § 179; 2 Black on Judgments, 1st ed., 584; 162 Pac. 498; 82 Ore. 541; 89 Sou. 514; 216 Fla. 169; 258 S. W. 609; 134 Ark. 109; 142 Ark. 267; 137 Ark. 187; 152 Ark. 18; 148 N. W. 586; 96 Neb. 619; 176 S. W. 933; 165 Ky. 9; 250 S. W. 217; 113 N. E. 60; 273 Ill. 501; 184 S. W. 470; 59 Pac. 976; 9 Okla. 133; 98 N. W. 802; 125 Ia. 28; 17 S. W. 502; 106 Mo. 510; 168 U. S. 59.

3. The appellees in their testimony severally admitted that they knew of the assessment of benefits and of the time when it was equalized, and that they did not protest; that they knew that the road was being built, and voiced no opposition. They waited until the road was completed with the proceeds of the bonds and the contributions from the Federal Government and the State, and now, having received all the benefits and advantages of the improvement, seek to repudiate the debt. They are estopped. 55 Ark. 148, 155; 159 Ark. 84; 158 Ark. 59; 185 U. S. 1; 194 U. S. 553; 36 Okla. 234; 128 Pac. 308; 40 Okla. 474; 139 Pac. 273.

*J. W. Bishop* and *Shaver, Shaver & Williams,* for appellees.

1. To make a matter *res judicata,* these things are fundamentally necessary: identity of the thing sued for, identity of cause of action, identity of persons and quality in the persons for or against whom the claim is made. 34 Cyc. 1666. It is uniformly held that a decree only binds parties to the record, that the proceedings must be between the same parties, and that strangers to the

record are not bound. 83 Ark. 154; 96 Ark. 451; 105 Ark. 86; 108 Ark. 574; 110 Ark. 494; 113 Ark. 380; 116 Ark. 501. A judgment is evidence of nothing in a subsequent action between different parties, except that it has been rendered. 96 Ark. 455; 35 Ark. 451; 94 U. S. 608.

Appellants rely solely upon a fiction of construction that appellees were parties to the proceeding wherein Kennedy and others were plaintiffs, when as a matter of fact they were not. A rule permitting any one to be deprived of property or the right to protect and defend it by a mere fiction of construction would violate and set at naught all protection guaranteed to the property owner by the Constitution. Art. 2, § 2, Const. Ark.; 49 Ark. 498; 64 Ark. 349; 77 Ark. 589; 117 Ark. 394. Persons who might have been made parties to litigation between strangers, but were not, are not bound by the judgment. 249 U. S. 246. See also 148 Ark. 629; 14th Amendment, U. S. Const.; art. 2, § 8, Const. Ark.

2. There is no merit in the contention that appellees are estopped. There is no question of repudiation of liability in the case, no personal obligation, liability or contractual rights are involved, but only the question of the validity and correctness of the assessment of benefits. The assessment of benefits is not a contract, but a remedy in which there are no vested rights. Page & Jones, § 166; 145 Ark. 441; 11 Supreme Court Reporter (U. S.), 790; 179 U. S. 489; 181 U. S. 34-42. See also 147 Ark. 290; 150 Ark. 567; 97 Ark. 43; 115 Ark. 97; 70 Ark. 451.

WOOD, J. On the 23rd day of June, 1923, the Howard-Sevier Road Improvement District No. 1 of Howard and Sevier counties, Arkansas (hereafter called district), instituted an action in the chancery court of Howard County against delinquent lands. This case was numbered 211 on the docket of the trial court. The complaint alleged the organization of the district and the levying of assessments under the authority of the act creating the same and the failure to pay these assessments. The complaint set forth a list of the supposed

owners and a description of the lands returned delinquent, together with the amount of the assessment and penalty set opposite the names. It was alleged that the assessments, penalties, interest and cost had not been paid on the lands mentioned. The prayer was that notice be given of the pendency of the action as provided by law, and that, unless the sums due were paid, a judgment be entered for the several amounts and for the sale of the lands described, to satisfy the same. After the institution of the suit, John C. Gardner, the receiver of the district, was joined as party plaintiff. .

J. M. Hunt and others, taxpayers in the district, filed an answer denying the allegations of the complaint, and set up affirmatively that the commissioners of the district had wholly failed to comply with the law requiring them to obtain and file a certified copy of the list of lands alleged to be delinquent. The parties filing the answer as defendants in the above cause also instituted an action in the Howard Chancery Court against the district and its commissioners, for themselves and "all those who have a general common interest with them in this suit." This case was numbered 258 on the docket of the trial court. In their complaint they attacked the validity of the assessment of benefits as a whole, which the district and the receiver were attempting to collect, in their suit against the lands of the district. They set up in detail the causes which they alleged made the assessment as a whole invalid. They alleged in substance that the assessment of benefits sought to be charged against their lands was an arbitrary legislative assessment, the Legislature having ratified and adopted an invalid assessment made by the board of assessors under a void act; that the assessment was so excessive as to amount to a confiscation of property; that it was in excess of any possible benefit to the property by reason of the improvement, and was greater in amount than the value of all the property in the district; that the attempted assessment was by the zone system, in which none of the elements affecting the benefits to

their property were considered; that they had never had a day in court to challenge the assessment of benefits. They alleged that they were not seeking to avoid or repudiate any just and legal assessment that might be made against their property by reason of the construction of the improvement; that they were ready and willing to submit to any just and proper assessment of benefits made in the manner provided by law. They prayed that the assessment of benefits now standing against their lands be canceled, and that the district be restrained from prosecuting the suit for the collection thereof, and that a reassessment of benefits by reason of the improvement be ordered, to the end that a fair, proper and legal assessment of benefits be ascertained and fixed.

The answer of the district and its receiver alleged the appointment of a receiver under the terms of the act creating the district, and set up and made an exhibit to the answer a copy of the decree of the United States District Court of the Western District of Arkansas, validating $380,000 of the bonds of the district "secured by first mortgage on the assessment of benefits." All of the allegations of the complaint were denied except as to the due organization of the district and the qualification of the assessors and the making of the assessment by them. The answer admitted that the assessment made by the assessors was under a special act passed at a special session of the Legislature, which session was declared void by the Supreme Court. They alleged that such assessment was afterwards validated by act No. 13 of the special session of the General Assembly in January, 1920; that, after the assessment was thus validated, a large amount of bonds were issued and sold and the proceeds used in the construction of the roads provided for under the original act creating the district and act No. 13, supra, amending the same. It was further alleged in the answer that on the 9th of April, 1921, T. G. Kennedy and others, for themselves and all other taxpayers in the district, instituted an action in the

Howard Chancery Court against the commissioners as representatives of the district, and also in their individual capacity, in which suit they attacked the validity of the assessment of benefits as a whole, alleging that the same was arbitrary, discriminatory, and confiscatory, in violation of the due process clause of the Constitution of the United States, and also contrary to the Constitution of the State of Arkansas. It was alleged that the district duly appeared and was made a party to the suit, and answered, denying all the grounds upon which the validity of the assessment of benefits was challenged. It was also alleged that the Howard Chancery Court rendered a decree in that cause sustaining the validity of the assessment of benefits, and that no appeal had been prosecuted from that decree; that the issues in the suit of Kennedy *et al.* against the district and its commissioners were identical with the issues in the present suit; that such suit was a class suit instituted by the taxpayers in the district in their own behalf and also for all other taxpayers within the district, and the district and receiver pleaded that the decree in that case sustaining the assessment of benefits was *res judicata* of the present action.

The causes were consolidated and tried together in the chancery court. Testimony was adduced on the issue as to the validity of the assessment of benefits, and the cause was heard upon this testimony and upon the pleadings and exhibits in the consolidated causes. Among other things the court found that "there is no merit to the plea of *res judicata* made by the plaintiffs in cause No. 211 and by the defendants in cause No. 258; that none of the parties plaintiff in case No. 258 and defendants in case No. 211 were parties to the cases pleaded in bar." The court further found that "the attempted assessment of benefits is arbitrary, confiscatory, and an unwarranted exercise of the taxing powers." The court thereupon entered a decree canceling the assessment of benefits and enjoining the collection thereof or any levy made for that purpose, and directed that the commis-

sioners appoint assessors to "assess the real, just, fair, true and actual benefits as have accrued against the several tracts and parcels of land in the district by reason of the construction of said improvements." The plaintiffs in case No. 211 and defendants in case No. 258 excepted to the findings and decree of the court, and duly prosecuted this appeal.

1. It will be observed from the above *resumé* of the pleadings in these causes that the appellees contend that the assessment of benefits which the appellants are attempting to enforce is, as a whole, an invalid assessment, for the reasons alleged. On the other hand, the appellants contend that the assessment of benefits was valid, and that such issue had already been determined by the former decrees of the Howard Chancery Court and the District Court of the United States, Western District of Arkansas, adversely to the appellees, which decree they pleaded as *res judicata* of the matters raised by the appellees in their pleadings in these causes. Therefore the first question for our determination is whether or not the court erred in holding that there was no merit in appellants' plea of *res judicata*.

The appellants' pleadings and the exhibits thereto established the following facts, which are undisputed by the appellees, to-wit: On the 9th of April, 1921, T. G. Kennedy and others instituted an action in their own right and for all other taxpayers within the district against the district and the commissioners in their representative and individual capacities, in which the assessment of benefits now under review, as a whole, was challenged on the ground that it was "unfair, unjust, discriminatory, confiscatory and not uniform," and in violation of the due process clause of the Constitution of the United States and contrary to the Constitution of the State of Arkansas, and therefore void; the cause was heard upon the pleadings raising the issue of the validity of the assessment, and the evidence adduced, and a decree was entered on the 9th of November, 1921, sustaining the validity of the assessment of

benefits, and dismissing so much of the complaint in that action as challenged the validity of such assessment for want of equity.

The appellees contend that they were not parties to that action, and hence were not bound by the decree, citing the case of *Cooper* v. *McCoy,* 116 Ark. 501, and other cases which hold that, in order that a former judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties, or their privies, involving the same subject-matter and cause of action, and must be determined on its merits. The same subject-matter was involved in the case of Kennedy et al. *v.* District as is involved in these consolidated causes, and that cause was heard upon its merits, and the cause of action was the same, as to the validity of the assessment of benefits.

The only remaining question is whether the appellees here, although not parties by name in the suit of Kennedy *et al.* against the district, were, in law, parties because of the fact that Kennedy *et al.* had instituted the action in their own right and for the benefit of all other taxpayers in the district. So far as we are aware, this precise question has never before been decided by this court, and is therefore one of the first impression in this State.

Our statute (§ 1098, C. & M. Digest) provides:

"Where the question is one of a common or general interest of many persons, or where the parties are numerous, and it is impracticable to bring them all before the court within a reasonable time, one or more may sue or defend for the benefit of all." This statute is decisive of the question, and it but declares the doctrine which is supported with practical unanimity where considered in other jurisdictions.

Numerous authorities are cited in the briefs of appellants to sustain this view. Out of the array we select the case of *Harmon* v. *Auditor of Public Accounts,* 123 Ill. 122, which is fairly representative of the others. In that case an action was instituted by certain prop-

erty owners against the town of Mount Morris, Illinois, and its officers and the Chicago & Iowa Railroad Company, to enjoin the town and its officers from issuing bonds to the railroad company. The issue was joined as to the right of the defendant town to issue the bonds, and the cause was finally adjudicated, denying the plaintiffs the relief sought. After this adjudication, four other taxpayers and property owners of the town instituted an action against certain bondholders and officers of the town, county and State, seeking to personally enjoin the collection of taxes upon their property for the payment of bonds issued to the railroad company. Judge Magruder, speaking for the Supreme Court of Illinois, of the action first brought by the taxpayers, among other things said: "The Pinckney bill was filed by certain property owners and taxpayers, as representatives of a class. Though not formally stating that it is filed on behalf of all the other taxpayers in the town, yet it constantly refers to them and their interests in the questions involved." And then, speaking of the last action brought by other taxpayers, he said: "The present suit was begun by Harmon and others, also taxpayers and property owners of the town, as representatives of the same class for whose benefit the Pinckney bill was filed. The complainants in this proceeding were represented by the complainants in the former suit, and are therefore bound by the decree therein entered. The remedy in suits of the character here indicated is in the interest of a class of individuals having common rights that need protection, and, in the pursuit of that remedy, individuals have the right to represent the class to which they belong. This jurisdiction, in some respects, rests on the principles of a proceeding *in rem.* We therefore think that there is sufficient identity between the parties filing the present bill and those who filed the bill in the Pinckney case to justify the pleading of the decree entered there as *res judicata* in this case." And, further along, he announces principles which are apposite to the case at bar as follows: "The value of a plea of

former recovery is not to be determined by the reasons which the court rendering the former decree or judgment may have given for doing so.. Nor is such former judgment or decree conclusive only as to questions actually and formally litigated. It is conclusive as to all questions within the issue, whether formally litigated or not. The principle of *res judicata* reaches further. It extends not only to the questions of fact and of law which were decided in the former suit, but also to the grounds of recovery or defense which might have been, but were not, presented.''

In addition to the authorities cited in appellants' briefs, see Freeman on Judgments, § 178; *Elreno v. Cleveland Trinidad Paving Co.,* 107 Pa. 163; *Gallagher v. Moundsville,* 34 W. Va. 730, 12 S. E. 859; *Ashton v. Rochester,* 133 N. Y. 187, 30 N. E. 965, 31 N. E. 334; *Dewey v. St. Albans Trust Co.,* 60 Vt. 1, 12 Atl. 224; *Cincinnati v. Emerson,* 57 Ohio St. 132, 48 N. E. 667.

2.   The judgment of the District Court of the United States, Western District of Arkansas, in which the Guardian Savings & Trust Company, as trustee for bondholders, instituted an action against the district and its commissioners, and in which the plaintiff sought to validate and collect the first installment on mortgage bonds of the district in the sum of $380,000, was likewise *res judicata* of the appellees' contentions in the case in hand. The district, in that case, represented the taxpayers, and they were bound by the judgment· of the Federal court. .*Orcutt v. McGinley,* 148 N. W. 586, 96 Neb. 619; *Stone v. Wynn,* 176 S. W. 933, 165 Ky. 9; *Rose v. Port of Portland,* 162 Pac. 498, 82 Ore. 541; *Town of Tallassee v. State,* 89 So. 514, 206 Ala. 169; *Pear v. East St. Louis,* 113 N. E. 60, 273 Ill. 501; 1 Freeman on Judgments, 4th ed. § 178; 2 Black on Judgments, 1st ed. 584, and numerous other authorities cited in appellants' briefs.

The issue in the Federal court case as to the validity of the bonds necessarily involved the issue as to whether there had been a valid assessment of benefits, for, if there

was no valid assessment of benefits, there could be no valid issue of bonds. *Western Randolph County Rd. Imp. Dist.* v. *Clifford,* 150 ·Ark. 94. It is not pretended that the action in the Federal court was collusive or simulated between the bondholders and the district to have the first issue of bonds of the district validated. As the district represented the taxpayers, it was bound to plead for them any defense that could have been set up which would have rendered the bonds invalid, and a good defense would have been that, for any reason whatsoever, there was no valid assessment of benefits. The district could, and should, have pleaded such · defense for the benefit of the taxpayers. See *Ellis* v. *Clark,* 19 Ark. 420; *Morris* v. *Curry,* 41 Ark. 75; *Jones* v. *Terry,* 41 Ark. 230; *Church* v. *Gallic,* 76 Ark. 423; *Ederheimer* v. *Carson Dry Goods Co.,* 105 Ark. 488; *Jimmerson* v. *Fordyce Lbr. Co.,* 119 Ark. 413.

The judgment of the United States District Court, after setting out the bonds, recited: They are ''the valid obligations of said district, and are each duly secured by a first mortgage on the assessment of benefits of said district, bearing even date to the bond issue, and duly recorded.'' The judgment in that case was duly pleaded and in evidence in these consolidated causes. It was the duty of the trial court to give full faith and credit to this judgment. *State ex rel. Craighead County* v. *St. Louis-S. F. R. Co.,* 162 Ark. 443; *Shaw* v. *Polk,* 152 Ark. 18; *Davies* v. *Patterson,* 137 Ark. 187; *Harris* v. *Harris,* 142 Ark. 267.

The facts of this record present a typical case for the application of the doctrine of *res judicata* above set forth, and exemplify the wisdom of the rule declared by our statute. This was a large district of several hundred taxpayers. If, at the end of two lawsuits involving ·the validity of an assessment of benefits in this district, in which all the taxpayers thereof were duly represented and in which it was adjudged that the assessment of benefits was valid, other taxpayers could bring new suits, and so on down, until every taxpayer by name

had been excluded, then indeed the only security upon which the bonds were issued and sold and the money furnished to make such improvements would be as flickering and insubstantial as the "borealis race."

The rationale of the doctrine of *res judicata* is well expressed by Judge Mitchell, in *State of Wisconsin* v. *Torinus,* 28 Minn, 175-179. "The doctrine of *res judicata,*" says he, "is founded upon two maxims of the law, one of which is that 'a man should not be twice vexed for the same cause,' the other that 'it is for the public good that there be an end of litigation;' and it is undoubtedly true that, if there be any one principle of law settled, it is that, whenever a cause of action, in the language of the law, '*transit in rem adjudicatam,*' and the judgment thereupon remains in full force and unreversed, the original cause of action is merged and gone forever. After judgment on the merits, a party cannot afterwards litigate the same question in another action, although some argument might have been urged on the first trial that would have led to a different result. Such a judgment is final and conclusive, not only as to matters actually decided, but as to every other matter which the parties might have litigated and had decided as incident to and essentially connected with the subject-matter of the litigation, as the facts then existed. The discovery of new evidence, not in the power of the party at the former trial, forms no exception to the rule. The doctrine is so just, and so necessary to the peace and good order of society, that we have no desire to either modify it or unreasonably limit its application."

The district, as we have seen, represented all the taxpayers in the Federal suit.

Since Kennedy and the others who instituted the original action attacking the validity of the assessment of benefits as a whole, which appellants are here seeking to enforce, represented the appellees and all the taxpayers and property owners of the district who were in the same class, it follows, from our statute and the above authorities, that the appellees were parties to that

original action the same as if they had been made so by name. The appellees are bound by the unreversed judgment of the trial court in that case, determined on the merits, that the assessment of benefits was valid. There is no contention here that that cause was a simulated or collusive lawsuit on the part of Kennedy and the others named with him and the district and its commissioners to obtain a judgment of the court validating the assessment. That it was not a collusive suit is abundantly shown by the opinion of this court in the case of *Holcomb* v. *Kennedy,* 158 Ark. 585, where one branch of that lawsuit was reviewed and decided.

3. The appellees contend that this court, in the cases of *Frazier* v. *McHaney,* 117 Ark. 394, and *Meyer* v. *Board of Imp. Paving Dist.,* 148 Ark. 629, has already decided that suits of this nature do not come within the above doctrine of class suits. The issue of *res judicata* was not raised in either of those cases, and, if it had been, those cases are easily differentiated on the facts from the present case, and have no application here.

In the case of *Frazier* v. *McHaney, supra,* certain railroad corporations, and a trustee for one of them, instituted an action against the Fourche Drainage District, challenging the assessments on their own lands in the district. No attack was made upon the validity of the assessment of benefits as a whole, and the action was instituted by the plaintiffs, not as a class action but simply as an action to correct assessments against their particular property and none other. After the decree was rendered, Frazier and others filed petitions asking to be made parties for the purpose of prosecuting an appeal to this court. We held that they were not parties to the action, and that only those who were parties when the decree was entered would have the right to prosecute an appeal.

In the case of *Meyers* v. *Board of Improvement of Paving District, supra,* the plaintiffs instituted the action attacking the validity of the assessment of benefits as

a whole, made under the ordinances creating improvement districts in the city of Van Buren. The statute under which the ordinances were passed, among other things, provided that "all persons who shall fail to begin legal proceedings within thirty days after, such publication for the purpose of correcting or invalidating such assessment shall be forever barred and precluded." The action was instituted within the thirty days by the plaintiffs, Meyers and others, and some one of them, for himself and others similarly situated, who might wish to join in the action. The action therefore was a class action in which the plaintiffs represented the other taxpayers in the district similarly situated. Several months after the institution of the action, and after the time had expired in which an action could be brought for invalidating the assessment, other property owners who had not joined, by name, in the original action, asked and were permitted by the trial court to become parties plaintiff. Speaking of this ruling of the trial court, we said: "We think the court should not have permitted the new parties to be made plaintiffs. Several months had then expired since the publication of the notices of the ordinances creating the district, and the effect of the court's action was to permit these persons, by adopting the pleadings of the persons whose names are set out above, to prosecute the litigation which the statute required them to begin within thirty days." The effect of this ruling was merely to treat as new parties those who sought to come into the suit after the time when an action to invalidate the assessment of benefits could have been brought, and who then sought to be made parties and to have the case from that time on proceed in their names to a final decree. The effect of the ruling of the trial court was to substitute these parties for those who had originally instituted the action, and this ruling, we held, was tantamount to the bringing of a new suit after the time had elapsed in which a suit could have been brought.

The question of *res judicata*, as we have already said, was not raised, and the issue now under review was not considered nor ruled upon, and the language of the opinion in the case above quoted certainly would not be controlling here, and, we believe, has no application to the facts of this record. We conclude therefore that the trial court erred in holding that there is no merit in appellant's plea of *res judicata*. Having reached this conclusion, the other interesting questions so elaborately and ably argued in the briefs of counsel for the respective parties pass out, and it would be supererogation, pure and simple, to consider and decide them. Hence we have not done so.

For the error indicated the decree is reversed, and the cause is remanded with directions to dismiss the appellees' complaint in case No. 258 for want of equity, and for such other and further proceedings in case No. 211 as may be necessary to enforce the collection of the levies based on the assessment of benefits according to law, and not inconsistent with this opinion.

HART, J., (dissenting). My dissent in this case is upon the ground that there was a legislative assessment of benefits which is shown by clear and convincing evidence to be palpably arbitrary and in plain abuse of legislative power and that this question was not an issue, either in the former suit in the State chancery court or in the Federal court sitting in chancery.

The doctrine of *res judicata* rests upon the principle that parties ought not to be permitted to litigate the same issue twice.

In *Dawson* v. *Parham*, 55 Ark. 286, the court in effect said that, to render a judgment conclusive, it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried or determined, or it must be shown by extrinsic evidence, consistent with the record, that the judgment necessarily involves the determination of the matter.

Again, in the case of *Pulaski County* v. *Hill*, 97 Ark. 450, the court said: "The true test of whether or not

a particular point, question or right has been concluded by a former suit and judgment is whether such point, question or right was distinctly put in issue, or should have been put in issue, and was directly determined by such former suit and judgment. It is true that the judgment is also conclusive of 'all matters properly belonging to the subject of the controversy and within the scope of the issues.' It is not the recovery, but the matter actually alleged by the parties and upon which the recovery proceeds, which creates the estoppel, and the judgment does not conclude rights or matters which were not put in issue, and which it was not necessary to put in issue in the suit.''

In the application of this well established rule to the facts of this case I do not think that it can be said that the suit of Kennedy and other taxpayers against the commissioners of the road improvement district in the chancery court can be said to be a decision of the issue raised in the case before us. The complaint in that case attacked the assessment of benefits on the ground that all the lands in the district were arbitrarily assessed at the same amount per acre without regard to value or distance from the highway, or the benefits which the particular tracts will receive from the construction of the highway. The complaint alleges that the lands of the plaintiffs are far removed from the highway and are benefited very little, if any, by the improvement.

The complaint further alleges that the farms in the district were assessed much higher, according to the value of the benefits received, than the lots in the town of Mineral Springs. Thus it will be seen that the assessment of benefits is attacked on the ground that a wrong basis for assessing benefits was adopted in the first place. That is to say, that the zone system of assessing benefits as adopted by the commissioners was arbitrary and discriminatory. It will also be seen that while the assessment of benefits was attacked on the ground that other irregularities and discriminations in the assessment of benefits were made, nowhere is the assessment attacked

on the ground that the assessment as a whole was so unreasonably high that it resulted in a confiscation of the lands of the district. In fact, the assessment of benefits in that case was attacked on the theory that it was an assessment of benefits made by a subordinate body appointed by the Legislature for that purpose, and was therefore subject to attack for irregularities, and also for adopting a wrong basis of assessment.

In the case before us, none of these grounds of attack are relied upon. The complaint recognized that act No. 13, approved February 3, 1920, confirms the assessment of benefits made by the board under the original act and adopts the assessment of benefits made by the board as a legislative assessment of benefits. This the Legislature had the right to do under our former decisions. This court has held that, because the Legislature could in the first place have levied the assessment itself, subject only to the right of the assessed landowners to have an arbitrary abuse of that power reviewed by the courts, it can adopt as correct the assessment made by a board created for that purpose and treat the act of adoption as a reassessment of the lands by the Legislature. *Coffman* v. *St. Francis Drain. Dist.*, 83 Ark. 54, and *Sudberry* v. *Graves,* 83 Ark. 344.

The special act referred to as confirming the assessment of benefits made by the commissioners concludes with the following: ''And the same in all respects ratified and confirmed, and declared to be the assessment of the district until the board orders a reassessment.''

The Supreme Court of the United State also lays down the rule that the Legislature may itself fix the basis of assessment and that its action cannot be assailed under the Constitution unless it is palpably arbitrary and a plain abuse of power. *Houck* v. *Little River District,* 239 U. S. 254.

The issue of whether the assessment of benefits made by the Legislature was palpably arbitrary and largely in excess of the local benefits was not raised or determined in the Kennedy suit. Kennedy and other

taxpayers joining with him in the suit had the right to bring it and to control the allegations of the complaint. They were bound for the costs in the case if they lost, and had a right to select the grounds upon which they would attack the assessment of benefits. They proceeded upon the theory that the assessment of benefits was made by a board appointed for that purpose, and they had a right to attack it as made by a board of assessors.

Hunt, on the other hand, believed that act No. 13, confirming the assessment of benefits, made it a legislative assessment, and that it could be only attacked upon the ground that it was a plain abuse of legislative power. Thus it will be seen that the point of attack made by him in no sense depends upon the proof made in the Kennedy case, and the issues in the two cases are wholly distinct. Each one, as a property owner in the district, had a right to attack the assessment of benefits from his own viewpoint, and, where separate and distinct grounds were relied on, it does not seem to me that Hunt and the other landowners joining with him in the present suit should be concluded by the decree in the Kennedy suit based upon entirely different grounds and a wholly distinct and separate cause of action.

Again, it is said that the suit by the bondholders in the Federal court concludes the plaintiffs in the present case. Now the commissioners in the present case brought suit against delinquent lands to collect the assessment of benefits against the land. This suit was filed on the 23rd day of June, 1923. On October 4, 1923, J. M. Hunt and other landowners in the district filed a complaint in equity against the commissioners of the district in which they attacked the assessment of benefits as being a legislative assessment of benefits and as being so excessive as to be arbitrary and a plain abuse of legislative powers. These two suits were consolidated for the purpose of trial.

The suit in the Federal court was decided on October 22, 1923, and recites that it is heard only as to the first bond issue. Judgment was rendered against the road

district for the amount of interest due, and a receiver was appointed to collect assessments in satisfaction thereof.

The present suit by the commissioners of the road district to collect the assessments against the lands was pending at the time the suit in the Federal court was decided. Before that suit was decided, J. M. Hunt and other landowners in the district had filed a suit in the State court contesting the assessment of benefits made by the Legislature on the ground that it was arbitrary, and this suit was pending when the suit in the Federal court was determined. Therefore I do not think that the decision in the Federal court concludes the landowners in the case before us.

Moreover, the pleadings in this case show that the decree in the Kennedy case alone is relied on to support the plea of *res judicata*. The suit in the Federal court is only pleaded by way of equitable estoppel. It does not seem to me that the adjudication in the Federal court that the commissioners have made default in the payment of interest of the first issue of bonds and the appointment of a receiver to collect the unpaid assessments ought to conclude the landowners from raising the point that the assessment of benefits is arbitrary and for that reason beyond the power of the Legislature to make.

In the majority opinion it is said that, if the contention of the landowners should be allowed to stand, "then indeed the only security upon which the bonds were issued and sold and the money furnished to make such improvements would be as flickering and insubstantial as the borealis race."

A sufficient answer to this is that courts ought to be as zealous to protect the rights of the landowners as those of the bondholders. Section 22 of our Bill of Rights provides that the right of property is before and higher than any constitutional sanction, and that private property shall not be taken, appropriated, or damaged for public use, without just compensation therefor.

We have repeatedly held that local assessments rest upon local benefits, and that whenever a local assessment is not grounded upon and measured by the extent of the particular benefit, it is *pro tanto* a taking of private property for public use without any provision for compensation.

In discussing the question of legislative assessments in *Coffman v. St. Francis Drainage District*, 83 Ark. 54, this court quoted from a former decision the following: "But the power of the Legislature in these matters is not unlimited. There is a point beyond which the legislative department, even when exerting the power of taxation, may not go consistently with the citizen's right of property. As already indicated, the principle underlying special assessments to meet the cost of public improvement is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. But the guaranties for the protection of private property would be seriously impaired if it were established, as a rule of constitutional law, that the imposition by the Legislature upon particular private property of the entire cost of a public improvement, irrespective of any peculiar benefits accruing to the owner from such improvement, could not be questioned by him in the courts of the country."

This brings me to a discussion of the evidence which shows that the legislative assessment was arbitrary. According to the evidence adduced in favor of the landowners, three persons went to the taxbooks and made a list of the real property in the district. They took the taxbooks of the lands in the district and a map of the district and made an appraisement of the value of each tract of land and also its kind and character. The tabulation as made set out the valuation of each tract of land and the improvements on it.

According to the compilation shown by this exhibit, there were 22,099 swamp and waste acres, of the value

of $72,718; 4,160 acres of woodland that can be culti-
vated, at the value of $20,010; 1,410 acres of pasture land
of the value of $5,640; 10,780 acres in cultivation, at the
value of $182,505; 38,499 acres in all, with a value of
$280,873, and a value of improvements of $77,050; with
a total value for all lands and all improvements of
$357,923.

The persons who made this compilation testified
that they were familiar with each tract of land in the
improvement district.    Their    testimony    was    corro-
borated by that of other landowners.  The total assess-
ment of benefits amounts to $706,711.20.

The record shows that the road is about seventeen
and a half miles long and extends from Mineral Springs,
a small town in Howard County, in a southwesterly
direction to a point where the public road crosses Little
River in Sevier County.  There are no large towns in the
district.  The district has received $120,000 in Federal
aid.  There have been two bond issues.  The first was for
$380,000 and the second was for $250,000.  All of this
money, except $19,000, which the district lost by reason
of a bank failure, has been expended one way and another
in making this improvement.  Thus it will be seen that
the proposed cost of the road is about $40,000 per mile.
The road is not a link in any important highway system.
The improved road does not even begin or end at one of
the county seats of Howard and Sevier counties.

The record also shows that two loan companies
which had been making farm loans in the territory
embraced in the road improvement district withdrew
from this territory because of the excessive assessment
of benefits made by the commissioners of the road
improvement district.  It is also shown that there is no
sale for even the best farm lands in the district. .

Several witnesses testified that their farms had
depreciated in value greatly on account of being placed
in the improvement district.  The owners offered their
farms for sale and were not able to get anything near as
much as they could before the district was organized.

The lower price was due entirely to the fact of the excessive taxes levied upon the lands by the road districts. The evidence is clear, unequivocal and decisive that the assessment of benefits is so unreasonably high as to make it plain that the Legislature abused its power. The evidence clearly shows that the assessment of benefits is so excessive as to render it very doubtful whether the lands to be benefited will suffice to pay the assessments against them. To enforce their collection would be the exercise of arbitrary power by the Legislature, instead of the assessment of benefits against the lands.

In discussing the question in *Allen* v. *Drew,* 44 Vt. 174, Judge Redfield, speaking for the court, said: "We have no doubt that a local assessment may so transcend the limits of equality and reason, that its exaction would cease to be a tax, or contribution to a common burden, and become extortion and confiscation. In that case, it would be the duty of the court to protect the citizen."

Finally, it is insisted that the landowners are concluded from maintaining this action by the doctrine of equitable estoppel; and this I consider the most difficult question in the case. To support this plea it is claimed that they knew that the road was being constructed and that many of the landowners paid the first assessment on their property. In this connection it may be stated that Hunt and others have not paid any assessments on their lands. It is true that many of the landowners did pay the first assessment; but they did this because the collectors of taxes refused to receive the State and county taxes unless the landowners would also pay these local assessments. At that time this court had not decided that the landowners had a right to pay the State and county taxes and refuse to pay local assessments. Thus it will be seen that this first payment made by the landowners was in effect a payment made under protest, and no estoppel should be grounded upon it.

The second and third installments of interest were paid by the commissioners taking part of the money

which they had borrowed and paying the interest on the bonds. The landowners did not know that they were doing this. The district was created by a special act, and the notice required by the Constitution as to local or special bills was not given or exhibited to the Legislature. Since the landowners have received actual notice of the passage of the act, they have, by suit and otherwise, protested in every way possible against the construction of the improvement.

One of the commissioners of the district stated that the attorneys for the bondholders were also the Little Rock attorneys for the district. It is true that the district also had a local attorney; but the knowledge of the attorneys for the district, who were also attorneys for the bondholders, must be imputed to the latter. *Bank of Hoxie* v. *Meriwether, ante,* p. 39. The attorneys for the district necessarily acquired knowledge of all the proceedings with regard to the construction of the improvement. They must have known that the landowners were bitterly opposed to the project on account of its excessive cost. They knew the length of the road, and the fact that it was not a part of any highway system. They knew the number of acres of land in the district and the amount of the assessment of benefits.

It is a significant fact that two loan companies engaged in making private farm loans in the territory comprising the road district withdrew from it as soon as they learned the amount of the assessment of benefits and that the road would be constructed under the act. Their agents testified that they did this because the road taxes were so high that, instead of the value of the lands being increased by the construction of the road, their value would be decreased thereby to such an extent that they would not longer be security for the private loans.

These things and other matters which necessarily came to the knowledge of their attorneys, who are also attorneys for the district, put them on notice that the

assessment of benefits was arbitrary and a plain abuse of legislative power. Therefore I am of the opinion that there is no ground of equitable estoppel against the land-owners.

The result of my views is that the assessment of benefits as made by the Legislature amounts to a virtual confiscation of the lands in the district, and, on that account, should be declared void, and a new assessment ordered to be made under the provisions of the original act.